# Enmanuel *v.* El Pueblo.

## Apelación procedente de la Corte de Distrito de San Juan.

No. 27.—Resuelto en Junio 22, 1904.

Acción Reivindicatoria—Falta de Personalidad—Falta de Acción.—La falta de documentos en que, en una acción reivindicatoria, funde el actor su derecho á la cosa que reclama, no puede dar lugar á la excepción de falta de personalidad, á que se refieren los artículos 502 y 532 de la Ley de Enjuiciamiento Civil, sino á la de *sine actione agis,* de que trata el artículo 503 de la misma Ley.

Id.—Legatario.—Si el actor reclamare sus derechos como legatario de un tercero, su personalidad quedará perfectamente justificada produciendo el testamento en que se le designe como tal, y la partida de defunción del testador.

Id.—Reconocimiento de Personalidad.—Si la parte demandada hubiere reconocido la personalidad del actor, no podrá después impugnarla válidamente

Derechos de Propiedad—Tribunales de Justicia—Procedimiento Legal Adecuado.—Las cuestiones referentes á la protección de la propiedad privada y á los derechos de las partes en relación con la misma, son cuestiones privativas de los Tribunales de Justicia, ya que nadie puede ser desposeído de sus bienes sin preceder el procedimiento legal adecuado, que sólo puede tener lugar ante la autoridad jurídica correspondiente.

Acción Reivindicatoria—Dominio é Identificación de la Cosa Reclamada.—Son requisitos indispensables en todo pleito en que se ejercita la acción reivindicatoria, la justificación del dominio, y la identificación de la cosa que se trata de reivindicar.

Id.—Título de Amparo—Posesión.—Justificado cumplidamente por el actor con un título de amparo de terrenos, que constituye título de propiedad, el dominio y la posesión de determinadas tierras que le fueron concedidas por el Gobierno Español, en nada puede afectar á la eficacia de sus derechos la circunstancia de haberse extraviado el expediente de la posesión que de dichos terrenos se le diera, si hubieran otros documentos auténticos que comprobaran el hecho de que tal posesión le fuera ·conferida.

Documento Público y Solemne.—Una certificación expedida por el Secretario de una Corporación Municipal, que es el encargado del archivo del Municipio, por mandato del Alcalde, autoridad competente, tiene el carácter de documento público y solemne.

Acción Reivindicatoria—Derechos de Personas que no Sean Partes en el Pleito.—Dirigida la acción reivindicatoria contra el que, según el Registro, aparezca como detentador de los derechos de propiedad que al demandante correspondan, no puede ser obstáculo para el éxito de la demanda la circunstancia· de que no se haya dirigido también contra otras personas que se consideren ser poseedores de los terrenos que se trate de reivindicar, pues no siendo partes en el juicio, sus derechos no han de ser perjudicados por vindicatoria, la ujstificación del dominio, y la identificación de la cosa ·que

la resolución que en el mismo se dicte ,y pueden hacerlos valer en el juicio correspondiente.

TERRENOS REALENGOS—POSESIÓN SIN TÍTULO—PRESCRIPCIÓN—REVERSIÓN AL ESTADO.—La posesión sin título, de terrenos incultos, por un período mayor de treinta años, es suficiente para acreditar su dominio á favor de los respectivos concesionarios, pues si mediare ese término de posesión, las concesiones quedan subsistentes, y los térrenos no pueden revertir al Estado.

NULIDAD DE ACTOS—NULIDAD DE INSCRIPCIÓN.—Siendo nulos los actos ejecutados contra lo dispuesto en la ley, son nulas asimismo las inscripciones que por virtud de esos actos se hubieren verificado en el Registro de la Propiedad.

## EXPOSICIÓN DEL CASO.

En el juicio seguido en el Tribunal de Distrito de San Juan, entre partes de la una Mr. Pierre Enmanuel, Barón du Laurens d' Oiselay, de la otra El Pueblo de Puerto Rico, sobre reivindicación de terrenos, cuyo juicio pende ante Nos á virtud de recurso de casación, hoy de apelación, interpuesto por la parte demandada á la que ha representado el Fiscal de esta Corte Suprema, habiendo llevado la representación y defensa de la parte apelada el Letrado Don Eduardo Acuña.

*Resultando* que con fecha treinta de Enero de mil novecientos uno, Mr. Pierre Enmanuel, Baron du' Laurens d' Oiselay, produjo demanda contra el Tesorero de esta Isla, ante el Tribunal de Distrito de San Juan, alegando como hechos los siguientes: que el Rey de España Don Cárlos III concedió en 1776 al Duque de Mahón, cuatro leguas de tierra, cuya donación fué confirmada en 1792, por el Rey Don Cárlos IV, habiéndose reducido luego aquélla extensión de terreno á ochenta y tres caballerías con cuatro quintos, las que fueron designadas en los pueblos de Naguabo, Fajardo, Luquillo, Loiza, y Pepino, pero como transcurrieran algunos años sin que la posesión se hiciera efectiva por medio de la correspondiente mensura, hubo lugar á reclamaciones que obtuvieron como resultado el que fueran designadas, como de la propiedad del Duque de Mahón, cuarenta y cinco caballerias y dos tercios, en el barrio de Cibao, de la jurisdicción del Pepino, hoy de Lares, terrenos que fueron mensurados y entregados á

dicho Duque; que esos terrenos por las modificaciones oca-
sionadas por el transcurso del tiempo forman actualmente
4133 cuerdas de terreno, equivalentes á 1624 hectáreas, 43
áreas y 3 centiáreas, radicadas en los barrios de Callejones
y Piletas, de la jurisdicción de Lares, partido judicial de
Aguadilla, con plantaciones de café, pastos y malezas, lindan-
tes al Norte con terrenos de Don José Gregorio Velez, al Sud,
los de Don Miguel Jesús Colón, al Este, el río de Camuy, y al
Oeste, terrenos de Don Juan José Lopez, bajo los puntos y
rumbos que se marcan en la demanda; que por estimar el Go-
bierno de la Isla que la representación del Duque de Mahón
no cumplía las condiciones de cultivo, á que estaba obligado,
la Junta de terrenos baldíos trató de ese particular y acordó,
en tres de Junio de 1854, la reversión á la Corona de España
de los terrenos concedidos al Duque, y después, por acuerdo
de la misma Junta, de veinte y dos de Diciembre del año ci-
tado, se dieron los terrenos de Lares á setenta y cuatro in-
dividuos que los venían poseyendo, habiendo recibido éstos
posesión formal de la participación á cada uno concedida:
que enterado de tales resoluciones la Sucesión del Duque
de Mahón, representada por Doña Mariá Balbo Bertone de
Crillón, á la que representaba por su minoría de edad, el
Conde Manfredo Balbo Bertone de Sambuy, elevó instancia
á la Reina de España solicitando el plazo de un año para que
se le pusiera en plena posesión de los terrenos expresados, á
fín de verificar su desmonte y cultivo, dejándose entre tanto
sin efecto las decisiones de la Junta de Repartimiento de
tierras, y con motivo de esa instancia fueron dictadas dos
Reales Órdenes, la primera de ocho de Abril de 1857, por la
que se prevenía al Gobernador de Puerto Rico informara á
la Reina sobre el estado del asunto dando parecer sobre el
medio de conciliar si era posible los intereses de familia del
Duque con los de la Agricultura de la isla, y que hasta tanto
la Reina no resolviera definitivamente sobre el particular, se
suspendieran los efectos del aviso dado á los herederos del

duque, sin adjudicarse de ningun modo á nuevos concesiona-
rios los terrenos en cuestión, y la segunda de 20 de Enero de
1859, por la que se ordenaba al Gobernador prestara á la
heredera del Duque toda la protección y facilidades que me
recía á fín de que practicara las gestiones convenientes para
reivindicar los terrenos; que en sesión de 25 de Octubre de
1857 acordó la Junta de terrenos baldíos pasaran los antece-
dentes del asunto al Vocal Auditor de Guerra, á quién se co-
misionó para extender la minuta del informe que había de
emitirse, en cumplimiento de lo mandado por la Reina: que
en siete de Abril de 1859, el Gobernador Capitán General de
esta Isla, teniendo en cuenta los antecedentes del caso, y es-
timando que el Gobierno de Madrid consideraba que la do-
nación al Duque de Mahón no fué una simple merced, sino
una remuneración de servicios prestados á la Nación, y apre-
ciando, además, que la heredera del Duque era menor de
edad, acordó de conformidad con el Auditor de Guerra, que
tan pronto se presentase en la jurisdicción el Conde de Sam-
buy, fuera puesto de nuevo en posesión de los terrenos que
habían sido adjudicados al Duque de Mahón, por los planos y
documentos que produjera: que los datos referentes á esa po-
sesión, que obraban en el Archivo del Gobierno, General, no
han podido encontrarse porque ese Archivo no existe en la
acutalidad, pero es un hecho indudable que tal posesión fué
dada cumpliéndose las órdenes del Gobierno, pues en el co-
piador de correspondencia oficial del Ayuntamiento de Lares,
del año 1859, aparece una comunicación en que el Alcalde ex-
presa que eleva á manos del Gobernador el expediente ins-
truido por la Alcaldía sobre la posesión dada á la Sucesión del
Duque de Mahón, de veinte caballerías y dos tercios de te-
rreno, en el barrio de Cibao, de aquella jurisdicción, todo en
virtud de la comunicación del Gobierno de 7 de Abril que
obraba por cabeza del expediente: que dicha posesión aparece
además comprobada en el pago de contribuciones por la Su-
cesión del Duque de Mahón, desde 1862, sin interrupción,

hasta el año económico de 1898 á 99; que en tal estado las cosas, Don Virgilio Acevedo, deseoso de adquirir la propiedad de los terrenos pertenecientes á la Sucesión del Duque de Mahón comenzó á levantar la oposición de los colonos al pago de las rentas que venían pagando, á pretexto de que dicha Sucesión había perdido los derechos de dominio, y consiguió que aquéllos le otorgaran la escritura de propiedad de dichos terrenos con fecha cinco de Julio de mil novecientos, ante el Notario de Lares, en el concepto de que los vendedores eran dueños, á título de la concesión que se les había hecho en 1854, lo cual era falso pues los concesionarios fueron desposeídos de los derechos adquiridos, y si continuaron en la finca fué en clase de colonos, como lo demuestra el que pagaron arrendamiento á la Sucesión del Duque de Mahón, y éste fué quién satisfizo las contribuciones: que con esa escritura acudió Acevedo á la Alcaldía de Lares para que dejase de figurar como contribuyente la Sucesión del Duque de Mahón, y elevada la instancia al Honorable Tesorero, dicto éste resolución en cuatro de Septiembre del mismo año, mandando se eliminase de los repartos á la Duquesa de Mahón, y figuraran en su lugar los terratenientes con las cuerdas de terreno que poseían, según su clase, con arreglo á la cartilla guía, y que se remitiera al Registro de la Propiedad, certificación de la resolución, á fín de que no tuviera efecto la inscripción á favor de Acevedo, debiendo entregar los terratenientes los títulos de concesión de las tierras que poseían, en consecuencia de lo cuál, los terrenos pertenecientes á la Sucesión del Duque de Mahón, se inscribieron en el Registro como propiedad del Pueblo de Puerto Rico, á virtud de orden del expresado Tesorero; que el Barón de Laurens hubo de trasladarse á esta Isla como heredero de la Duquesa de Mahón á defender sus derechos, y habiendo presentado los documentos que los justificaban al Hon. Tesorero, reconoció éste que entre esos documentos existían Reales órdenes y disposiciones del Gobierno General de Puerto Rico, que siendo

auténticas, indicarían que la reversión de las tierras fué suspendida y puestos de nuevo en posesión los representantes de la Sucesión de la Duquesa de Mahón, pero que al Tribunal competente correspondía resolver si los documentos eran auténticos y si se habían llenado cumplidamente las condiciones y requisitos de las órdenes por las cuales la reversión fué suspendida, aunque no vacila en hacer constar que si esas órdenes y disposiciones se hubieran registrado en el correspondiente archivo, la acción tomada por su oficina no hubiera tenido lugar, y que en su opinión dichos documentos constituyen una prueba muy importante en relación con la cuestión y su resultado: alega la parte demandante, como fundamentos de derecho, que los documentos que acompaña á la demanda constituyen un título perfecto de dominio, á favor de la Duquesa de Mahon y de su actual heredero, que la identidad de los terrenos que reclama, y los inscritos á favor del Pueblo de Puerto Rico, se justifica por el mismo texto de la comunicación del tesorero ordenando la inscripción, y que el dueño de un inmueble tiene derecho á reclamarlo de la persona en cuyo poder se encuentre y á solicitar la nulidad de la inscripción que á su favor se haya hecho en el Registro; y ejercitando la acción de dominio, concluyó con la súplica de que se declare por sentencia ser de la propiedad del demandante los terrenos de que se trata, cancelándose la inscripción hecha en nombre del Pueblo de Puerto Rico y sustituyénla con otra á favor del demandante.

*Resultando* que la parte actora acompañó á la demanda los siguientes documentos: 1. Copia del testamento ológrafo otorgado en diez y seis de Setiembre de 1899 por Madame de Crillon Duquesa de Mahon, la que lega á Mr. Pierre du Laurens, Oficial de Caballería, los terrenos de Lares, sitos en la Isla de Puerto Rico y vinculados en Mayorazgo, legando además el título de Duque de Mahón y la Grandeza de España á Mr. Louis des Balbes de Berton de Sambuy: II. Copia del acta de defunción de Madame Maríe Gabrielle

Antoinette de Barton de Balbe de Crillon de Mahón ocurrida en Avignon de Francia el día 11 de Abril de 1899. III. Copia del escrito presentado al Gobernador Capitán General de esta Isla, en 26 de Noviembre de 1828, por Don José Javier de Aranzamendi, como encargado del Duque de Mahón Crillón, para que previa mensura y con citación de los vecinos colindantes, se le diera posesión de las cuarenta y cinco caballerías y ⅔ de otra que aún le faltaban para completar las que le fueron concedidas por Real Gracia, oficiando á ese fín á los Tenientes á Guerra de los Partidos del Pepino, Isabela y Loiza donde aún había terrenos baldíós ó realengos, y librándosele el correspondiente título de propiedad, legítima adquisición, protección y amparo. IV. Copia del decreto del Gobernador General de 29 de Noviembre citado, comisionando á los Tenientes á Guerra de Loiza, Isabela y Pepino para que hicieran deslindar por Agrimensor con citación de colindantes los terrenos realengos que la representación del Duque de Mahón Crillon aseguraba existían en sus respectivos distritos, siendo de notar que según manifestación de dicho Duque, en el partido del Pepino había 20 caballerías y ⅔: V· Copia del decreto de 14 de Abril del año siguiente, del Teniente á Guerra del Pepino, ordenando la mensura de las veinte caballerías y ⅔ de terrenos, con citación de colindantes, á virtud de lo dispuesto por el Gobernador y Capitán General: VI. Copia de la diligencia de mensura practicada con citación de colindantes fijando puntos, rumbos y distancias, la que tuvo lugar en 22 del repetido Abril. VII. Copia del título de amparo expedido en 10 de Marzo de 1830 á favor del Duque de Mahón Crillón por el Capitán General Don Miguel de la Torre, de las veinte caballerías y ⅔ de otra que habían sido mensuradas en el Partido del Pepino bajo los mismos puntos y rumbos que se marcaron en la diligencia de mensura de que se deja hecho mérito, cuyo título de amparo se expide á favor del Duque de Mahón sobre las tierras de que se trata para que las use, disfrute y posea como dueño

propietario de ellas, cultivándolas del modo y forma que más le acomode, sin que persona alguna pueda entonces ni en ningún tiempo turbarle la posesión y propiedad de ellas. VIII. Certificación de varias actas de la extinguida Junta Superior de Repartimiento de terrenos baldíos, de las cuáles aparece que en sesión de Abril de 1854, dicha Junta teniendo en cuenta las Reales órdenes referentes á los terrenos baldíos que poseyera en esta Isla el Duque de Mahón Crillón, y vistos los informes producidos por las Juntas vecinales de los pueblos de Rio Grande y Lares, en que consta que la Sucesión de aquél ha poseído, en la jurisdicción del primero, un número de caballerías de terreno, sin expresarse cuál sea, y en el territorio del segundo veinte caballerías y ⅔ de otra, constando de ambos informes no sólo el abandono en que estaban las enunciadas tierras, sino también que no había persona alguna encargada de satisfacer los derechos reales de ellas, acordó declararlas baldías, cometiendo al Vocal Auditor de Guerra la redacción de los correspondientes anuncios para poderlas repartir por ese medio entre las personas que las solicitaran, sin perjuicio de dar cuenta á la Reina de tal determinación; que en otra sesión de la misma Junta, á pedimento de la Junta Municipal de Lares, en que manifestaba la conveniencia de que fueran agraciados 74 vecinos, cuya relación remitió, con los terrenos que estaban poseyendo, de los que pertenecieron al Duque de Mahón Crillón, se acordó la concesión de tales terrenos á los que los poseían, con tal de que no pasaran de cien cuerdas cada uno, debiendo en término de dos meses sacar las oportunas comisiones para la mensura y satisfaciendo los derechos establecidos, habiéndose acordado también otorgar concesiones de los mismos terrenos del Duque de Mahón, en las comarcas de Lares y Rio Grande, á 34 individuos que en la mencionada certificación se expresan; y por último, que en sesión celebrada en 25 de Octubre de 1857 se dió cuenta con dos Reales órdenes fechadas en 18 de Marzo y 8 de Abril del mismo año,

acompañando á la primera una memoria dirigida al Minis-
tro de Estado de España por el Caballero Berton de Sambuy,
tutor de la joven heredera del Ducado de Mahón, referente
á los terrenos que los Reyes Don Cárlos III y IV concedieron
al primer Duque de aquél nombre, é incluyendo con la 2ª una
solicitud del mismo tutor, elevada á la Reina y tendente, lo
mismo que la memoria, á obtener una prórroga de tiempo
para la reversión al Estado de los mencionados terrenos, pre-
viniéndose por la Reina se manifieste cuáles son los antece-
dentes y estado actual del negocio, y se dé parecer sobre el
modo de conciliar, si es posible, los intereses de familia del
Duque con los de la Agricultura de esta Isla, y que hasta
tanto la Reina no resuelva definitivamente acerca del asunto,
se suspendan los efectos del aviso que se dió á los herederos
del Duque por conducto del Cónsul de Francia, sin adjudi-
carse, entre tanto de ningún otro modo, á nuevos concesiona-
rios, los terrenos aún no recibidos á cultivo, á que se refiere la
citada Real Orden y la instancia que se acompaña, habiendo
acordado dicha Junta que se pasaran los antecedentes y
las resoluciones soberanas expresadas al Vocal Auditor de
Guerra, para extender la minuta del informe que había de
darse á la Reina.    IX.    Copia de la solicitud del Caballero
Berton de Sambuy, elevada con fecha primero de Abril de
1857, á la Reina de España y que motivó la Real Orden ya
expresada de ocho de Abril citado, en cuya solicitud expresa
el Conde Manfredo Balbo Bertone de Sambuy, en represen-
tación de Doña Maria Balbo Bertone de Crillón, heredera
del Ducado de Mahón, que había recibido por un medio tar-
dío é indirecto el aviso dado al Cónsul de Francia en esta
Isla, por la Presidencia de la Junta Repartidora de terrenos,
relativo dicho aviso á haber decidido esa Junta en sesión de
24 de Mayo de 1856, en vista del Real Decreto de 15 de Sep-
tiembre de 1852, que declara revertibles al dominio de la
Corona las 27 caballerías de tierra situadas en Rio Grande
y Lares y del de 13 de Diciembre de 1854, dictado en virtud

de la última reclamación hecha por la familia del Duque de Mahón, se notificase á dicha familia que si quería conservar aún algunos de los terrenos que le habían sido concedidos en Naguabo, Fajardo y otros puntos, nombrase inmediatamente un apoderado que presentara la medida y límites de estos terrenos y los pusiera en estado de cultivo en el término de un año del modo establecido en la Circular de 23 de Abril de 1856, satisfaciendo los derechos, pués en caso contrario volverían al dominio de la Corona, concluyendo con la súplica de que se le concediera el plazo de un año, á contar desde el día en que su pupila llegara á la mayor edad, para ponerse en plena posesión de los terrenos de que se trata y verificar su desmonte y cultivo, declarando entre tanto sin efecto las decisiones de la Junta del Repartimiento de tierras en esta Isla y ordenando la devolución de las 27 caballerías expresadas, si es que efectivamente ha sido declarada su reversión, y en el caso que por disposiciones regulares de la Junta, ó bien por prescripciones legales, alguna parte de aquellos terrenos perteneciese ya á otros legítimos propietarios, á los cuáles no se pueda despojar de ellos, se mande que en su lugar se asignen á la familia del Duque de Mahón otros terrenos equivalentes y situados en las mismas condiciones indicadas en las Reales Cédulas de Concesión de 4 de Julio y 25 de Septiembre de 1776. X. Copia simple de la Real Orden de 8 de Abril de 1857, recaida á la anterior instancia, cuya Real Orden contiene los particulares ya expresados. XI. Copia simple de la Real Orden de 20 de Enero de 1859, en que la Reina de España ordena al Gobernador General de esta Isla preste al Conde Manfredo Bertone de Sambuy toda la protección y facilidades que por su rango merece, á fín de que practique las gestiones que sean convenientes para reivindicar los terrenos heredados por su hija política y pupila la Srta. Da. María Bertone de Chillón, Duquesa de Mahón y Grande España de 1ª. Clase: XII. Comunicación del Gobernador General Cotoner, su fecha 7 de Mayo de 1859, di

rigida al Conde Manfredo Bertone de Sambuy en que se inserta el decreto del Gobierno General de 7 de Abril anterior, conforme con el dictamen del Auditor de Guerra, en cuyo decreto se ordena que la representación del Duque de Mahón sea posesionada nuevamente en los terrenos que le fueron expropiados, por los linderos que marquen los planos y documentos que produjere, dejando á salvo los derechos de los que se hallen poseyéndolos en todo, ó en parte, que se ventilarán donde y en la forma que corresponda á derecho, dándose cuenta á S. M· habiendo sido dictado á virtud de expediente promovido por el Conde Manfredo Bertone de Sammuy, como representante de la Sucesión del Duque de Mahón Crillón, para que le pusiera en posesión de los terrenos que tenía en esta Isla. XIII. Copia simple de la orden dirigida á las autoridades locales de Fajardo, Naguabo, Luquillo, Ceiba, Lares, Isabela y Rio Grande en 7 de Abril de 1859, para conocimiento del Decreto de la misma fecha y fines consiguientes. XIV. Copia certificada expedida por el Secretario del Ayuntamiento de Lares de una comunicación obrante en el libro copiador de correspondencia del año 1859, cuya comunicación dice así: "Excmo. Sr. Tengo el honor de elevar á las superiores manos de V. E. el expediente instruido por esta Alcaldía sobre la posesión dada al Señor Conde de Sambuy como legítimo representante de la Sucesión del Excmo. Sr. Duque de Mahón Crillón de 20 caballerías y ⅔ en el barrio de "Cibao" de esta jurisdicción, todo en virtud de la superior comunicación de V. E· fecha 7 de Abril último que obra por cabeza de dicho expediente.— Lares, Junio 4, de 1859." XV. Copia certificada de la comunicación del Tesorero de Hacienda, dirigida en 4 de Setiembre de 1900 al Alcalde de Lares, y que literalmente dice así: Visto el acuerdo adoptado por el Ayuntamiento en sesión extraordinaria del 27 de Agosto último, que en copia remitió U. con oficio de 1°. del corriente, con motivo de una instancia documentada, promovida por Don Virgilio Acevedo

y Hernández en solicitud de que se elimine de los repartos
puestos al público para la contribución territorial de 1900 á
1901, á la Duquesa de Mahón Crillón y que en su lugar figure
en ellos el mencionado Acevedo como cesionario de las tie-
rras que á dicha Duquesa se atribuyen en ese término munici-
pal, las cuales adquirió de los legítimos poseedores ó sean
los derechos y acciones que tienen sobre las mismas los te-
rratenientes que pacíficamente las vienen poseyendo.—Visto
el escrito de alzada interpuesto por el Don Virgilio Acevedo
contra el referido acuerdo por no haber el municipio dictado
resolución y por el contrario eleva los antecedentes á esta
Tesorería para lo que corresponda.   Vistos los anteceden-
tes y resultando: 1.   Que desde 1776 fueron concedidos al
Duque de Mahón Crillón 27 caballerías de tierra, que com-
ponen 5,400 cuerdas, en Rio Grande y Lares, las cuáles no ha
usufructuado, ni cultivado, según Circular del Gobernador
Capitán General, inserta en la Gaceta número 67 de 6 de
Junio de 1854.   2.   Que por Real Orden de 13 de Setiembre
de 1852 se declaró que se estaba en el caso de revertir á la
Corona dichas tierras, que sin cuidado y cultivo del conce-
sionario se hallan en Rio Grande y Lares, y disponiendo á
la vez se incoase el respectivo expediente.   3.   Que la Junta
Superior de terrenos baldíos acordó declarar revertidos al
Estado los terrenos indicados, y que se hiciese saber al pú-
blico para que las personas que reuniesen las condiciones de
la Ley las pidiesen, si les convenían.   4.   Que el Ayunta-
miento de Lares, en un acuerdo de 18 de Agosto de 1854,
hace mérito de la concesión hecha á uso y sin propiedad á los
mismos que venían usufructuando los terrenos en cuestión.
5.   Que en 27 de Diciembre del mismo año, la Junta de Te-
rrenos concedió los terrenos revertidos al Estado á los que
los poseían, con la condición de que no pasasen de 100 cuer-
das á cada uno, y con la obligación de que en el término de dos
meses sacasen las oportunas comisiones para la mensura,
satisfaciendo los derechos establecidos; pero no consta que

se hayan llenado estos expresados requisitos. 6. Que los terratenientes, todos ó en parte, por escritura pública otorgada en Lares, ante el Notario interino Don Salvador Picornell y Cardona, el día 5 de Julio del presente año hicieron traspaso á favor de Don Virgilio Acevedo y Hernández, de cuantos derechos y acciones puedan corresponderles sobre las tierras indicadas, radicadas en los barrios de Callejones y Pilotas, de ese término municipal, con un área en conjunto de 4133 cuerdas, equivalentes á 1624 hectáreas, 43 áreas, y 43 centiáreas, lindantes con terrenos realengos y sin títulos, y con los de José Gregorio Velez, José Miguel Colón, Juan José Lopez y el rio Camuy. Y considerando. 1.—Que los terrenos que fueron concedidos desde 1776 al Duque de Mahón Crillón, pertenecen al Estado, hoy Tesoro Insular de Puerto Rico, desde que le fueron revertidos por la Junta, y ninguna otra persona tiene derecho á ellos, sino el Tesoro Insular. 2.—Que aunque fueron concedidos á los 74 terratenientes por la misma Junta, no ha sido ultimado el expediente por no haber llenado los terratenientes los requisitos ordenados. 3.—Que la Duquesa de Mahón Crillón no puede, ni pudo, figurar en les Repartos de Territorial, y serán responsables de las consecuencias los que la anotaron sin la autorización competente. 4.—Que tampoco los terratenientes pueden ceder ni traspasar lo que no es suyo, siendo por tanto nula y de ningún valor ni efecto la escritura de cesión hecha á favor de Don Virgilio Acevedo. Por tanto vengo en disponer. 1.—Que se elimine inmediatamente de los Repartos á la Duquesa de Mahón Crillón y en su lugar se hagan figurar á los terratenientes, uno por uno, con las cuerdas de terreno que posee, sus clases y demás circunstancias de la Cartilla-Guía. 2.—Que se remita al Registro de la Propiedad copia certificada de esta resolución á fín de que no tenga efecto la inscripción á favor de Don Virgilio Acevedo del traspaso á que se contrae la escritura pública antes indicada. 3 Que todos los terratenientes entreguen, previo recibo en esa Al-

caldía, los títulos de concesión que en su caso posean y les dá.
derecho al usufructo de las tierras, cuyos documentos remi-
tirá usted con factura duplicada á .esta Tesorería para que
obren en el expediente y sus demás efectos, ó certificación ne-
gativa. Lo que comunico á Vd. para su conocimiento, el del
Municipio, el de Don Virgilio Acevedo y Terratenientes por
medio de notificación en forma reglamentaria, remitiendo
también las diligencias de dichas notificaciones á los fines
que correspondan.'' XVI. Certificación expedida por el Ál-
calde y Secretario del Ayuntamiento de Lares expresiva de
las contribuciones satisfechas por el Duque de Mahón Crillón,
·por la Sucesión de dicho Duque ó por la Duquesa de Mahón
Crillón, desde el año.de 1862 á 1899: y XVII. Carta dirigida
por el Hon. Tesorero con fecha 4 de Enero de 1901 al Baron
du Laurens d' Oiselay en que hace á éste las manifestaciones
que se le atribuyen en la demanda.

*Resultando*: que el Fiscal de esta Corte Suprema, en re-
presentación del Tesorero de Puerto Rico, al contestar la de-
manda alegó como excepción dilatoria la de falta de per-
sonalidad en la parte actora, exponiendo en apoyo de dicha
excepción que habiendo concedido el Rey Carlos III, á Don
Luis Balbo Bertone Duque de Crillón, en recompensa de ser-
vicios prestados á la Corona de España, el Título de Duque
de Mahon con la Grandeza de España de 1ª clase, por Reales
Cédulas de 30 de Marzo de 1782 y 13 de Mayo de 1783, como
esa alta dignidad exigía la fundación de un Mayorazgo que
estuviera unido á perpetuidad á la Grandeza, el Duque de Ma-
hón destinó.para constituirlo una de las cuatro leguas cuadra-
das de terreno que el mismo Rey Carlos III le había conce-
dido en esta Isla: que constituida en vínculo y mayorazgo
anexo al título y Grandeza de España de Duque de Mahón, una
parte de los bienes concedidos al Duque de Crillon, esa parte
ha debido pasar de unos á otros poseedores del Mayorazgo,
hasta el momento en que se publicaron en España las leyes
desvinculadoras de la propiedad, ó sean las de 11 de Octubre

1820, 15 de Mayo y 28 de Junio de 1821, 9 de Junio de 1835 y 19 de Agosto de 1841, que prohibieron la fundación de todo vínculo ó Mayorazgo y convirtieron en libres los bienes entonces existentes en los poseedores de Mayorazgos, con la obligación de reservar la mitad para el sucesor inmediato: que el demandante no expresa si hace su reclamación á título de Mayorazgo, ó á título de herencia, pero en el primer caso ha debido justificar la existencia de mayorazgo y de todos modos está siempre en la obligación de probar, por medio de la documentación correspondiente, que los bienes de que se trata, tanto en su mitad vinculada, como en la otra mitad que se reservó al poseedor, han venido por orden de sucesión extricto y legal, ó por disposiciones testamentarias, á ser de su propiedad; y que no habiendo ésta justificado el carácter y representación con que reclama, en cumplimiento del deber que le impone el número 2°. del artículo 532 de la Ley de Enjuiciamiento Civil, debe apreciarse la excepción dilatoria propuesta y desestimarse la demanda.

*Resultando* que también alegó el demandado la excepción perentoria de falta de acción, exponiendo, en su apoyo, que no obstante la concesión hecha al Duque de Crillón por el Rey Carlos III de España en Reales Cédulas de 4 de Julio y 25 de Septiembre de 1776, de cuatro leguas cuadradas de terreno en esta Isla, no se le dió posesión de ellas, no se le señaló siquiera el lugar ó lugares de la Isla en donde estaban enclavadas, por lo que en el año de 1837 los apoderados de la familia del Duque aún estaban reclamando sobre el particular; que como los concesionarios no cumplieran con la condición precisa de desmontar y cultivar los terrenos, el Gobierno de esta isla lo informó así al de España, y descendió la Real Órden de 15 de Setiembre de 1852, de la que se acompañaba copia á la demanda, y en cumplimiento de ella, la Junta de Terrenos baldios declaró revertidos á la Corona los terrenos que se concedieron al Duque de Mahón Crillón, dictándose al

efecto, con fecha 3 de Julio de 1854, la. Circular número 77 publicada en la Gaceta Oficial: que en 27 de Diciembre del mismo año, la Junta de terrenos baldios concedió los revertidos al Estado á los que venían poseyéndolos, con la condición de que no pasaran de cien cuerdas respecto de cada uno de ellos, y con la obligación de que en el término de dos meses sacasen las oportunas comisiones para la mensura y satisficieran los derechos establecidos, sin que conste que se llenaran tales requisitos: que no teniendo representante legal en esta isla la Sucesión del Duque de Mahón Crillón, se le notificaron las resoluciones de que se deja hecho mérito, por conducto del Señor Consul Francés, y entonces el Conde Manfredo Balbo Bertone de Sambuy, en su calidad de protutor y padre político de la joven Doña María Balbo Bertone de Crillón, heredera del Ducado de Mahón y de la Grandeza de España de 1ª clase, presentó un escrito á la Reina de España con fecha 1º. de Abril de 1857, escrito que en copia se acompañó á la demanda y que motivó la Real Órden de 8 de Abril del mismo año, de la que también se presentó copia por la parte actora: que al trasladarse á esta isla el Conde Manfredo Bertone de Sambuy, con el fín de poner en claro los derechos que asistieran á su hija política y pupila, la Duquesa de Mahón, se le dió, por Real Orden de 20 de Enero de 1859, recomendación oficial para el Gobernador de esta Isla, al efecto de que se le prestaran las facilidades que por su rango merecía, en los términos que expresa la copia de dicha Real Orden presentada en copia con la demanda: que una vez en esta isla el Conde Manfredo Bertone de Sambuy, acudió á la Autoridad Suprema de ella, representada entonces por el Segundo Cabo Medivilla, quién, excediéndose de sus facultades, por Decreto de 7 de Abril de 1859, ordenó que la representación del Duque fuera posesionada de los terrenos que le habían sido adjudicados, por los linderos que marcaran los planos y documentos que produjese, dejando á salvo los derechos de los que se hallaron poseyéndoles, y ordenando se dic-

ra cuenta á la Reina de tal resolución; que no consta que tal
posesión se diera, pues sobre ella únicamente existe como
antecedente la comunicación del Alcalde de Lares de 4 de
Junio de 1859, de que se hace mérito en la demanda: que si
bien resulta que la sucesión del Duque de Mahón ha pagado
contribuciones al Municipio de Lares, desde el año de 1862 al
1899, ese hecho no es fundamento bastante para justificar el
derecho de propiedad, pués sólo es un requisito que sirve para
justificar, unido á otros, la posesión de la finca, sin perjuicio
de tercero: que ni antes ni después del año de 1859, la familia
del Duque de Mahón Crillón cumplió las condiciones que se le
exigieron, de desmontar y cultivar los terrenos que le fueron
concedidos en 1776: que en 5 de Julio de 1900, por escritura
pública, la mayor parte de los que sin justo título venían po-
seyendo los terrenos objeto del pleito, cedieron sus supuestós
derechos á favor de Don Virgilio Acevedo Hernández, quien
solicitó del Ayuntamiento de Lares, fuera eliminada la Suce-
sión del Duque de Mahón de los repartos contributivos, y se le
hiciera figurar en su lugar, y consultada tal pretensión con
el Tesorero de Puerto Rico, dictó éste la resolución de 4 de
Septiembre de 1900, cuya copia se acompañó á la demanda.
Alegó la parte demandada, como fundamentos de derecho,
que la Capitanía General al dar su Decreto de 7 de Abril de
1859, se había excedido de sus facultades, las que debieron
limitarse al cumplimiento de la Real Orden de 8 de Abril de
1857, dejando la resolución del asunto á la Reina de España,
la que tampoco, por Real Orden de 20 de Mayo de 1859, le
dió facultades para que ordenara la posesión dispuesta por
el decreto de la capitanía general de 7 de Abril de 1859: que
el pago de contribuciones no justifica dominio: que ni el Du-
que de Crillón y de Mahón, ni sus herederos, han cumplido
con la condición de desmontar y cultivar los terrenos que se
le concedieron por la corona de España y por tanto no han
podido adquirir el completo dominio de dichos terrenos: que
las acciones reales prescriben á los treinta años, cuando re-

caen sobre bienes inmuebles, según el artículo 1963 del Código Civil y que por virtud del Tratado de Paz entre los Estados Unidos de América y el Reino de España, los Estados Unidos adquirieron esta Isla con todos los edificios, vías públicas y demás bienes inmuebles que con arreglo á derecho son del dominio público, y correspondían ántes á la Corona de España, sin que respecto de esos bienes la Ley Orgánica de Puerto Rico haya hecho trasmisión alguna de propiedad al Pueblo de Puerto Rico, debiendo por tanto considerarse como propiedad pública del Pueblo de los Estados Unidos, según los artículos 2 y 8 del Tratado de París y sección 13 de la Ley Orgánica de Puerto Rico, incumbiendo hoy al Poder Supremo de los Estados Unidos hacer lo que no llegó á hacer la Reina de España, ó sea dictar la resolución definitiva, que se reservó en la Real Orden de 8 de Abril de 1857. Y concluyó el Fiscal con la súplica de que se apreciara en primer término la excepción dilatoria de falta de personalidad en el demandante, y en su defecto, se apreciara la falta de acción ejercitada, y por ese fundamento se desestimara la demanda, con las costas al actor, declarando en ese último caso, que las reclamaciones de la parte demandante deben ser establecidas ante el Gobierno Supremo de los Estados Unidos, á quién compete dictar, respecto de ellas, resolución definitiva.

*Resultando* que abierto el juicio á prueba se trajo á los autos, á instancia de la parte actora, copia de la certificación expedida por el Tesorero de Puerto Rico, en catorce de Septiembre de 1900, para que se inscribieran en el Registro de la Propiedad, á favor de El Pueblo de Puerto Rico, las cuatro mil ciento treinta y tres cuerdas de terreno radicadas en los barrios de Callejona y Piletas, de Lares ,partido judicial de Aguadilla, con plantaciones de café, pastos y malezas, bajo los linderos que se expresan en la misma escritura otorgada á favor de Don Virgilio Acevedo y Hernández, en cinco de Julio de mil novecientos, y bajo los mismos puntos y rumbos consignados en el título de amparo que en diez de Marzo de

mil ochocientos treinta fué expedido á favor del Duque de Mahón Crillón, siendo de notar que en dicha certificación se hace constar que los expresados terrenos pertenecen, por título dominical, al Pueblo de Puerto Rico, pues si bien en el año 1776 fueron concedidos al Duque de Mahón Crillón por no haberlos este cultivado fueron revertidos al Estado por la Junta de Terrenos baldios, hacía el año de 1854, en cumplimiento de Real Orden de 15 de Setiembre de 1852, habiéndose llevado á efecto esa inscripción de posesión en el Registro de la Propiedad de Aguadilla, con fecha 14 de Setiembre de 1900.

*Resultando* que si bien á instancia de la parte actora se libró cumunicación al Secretario del Gobierno de la Isla para que, con vista del archivo entregado por el Gobierno Español, se expidiera certificación del oficio dirigido por el Alcalde de Lares en 4 de Junio de 1859, al Gobierno General de la Isla, dando cuenta de haber puesto en posesión de los terrenos de Lares al representante de la sucesión del Duque de Mahón Crillón, y de los demás antecedentes relacionados còn dicho oficio, tal prueba no pudo practicarse porque el índice de los expedientes remitidos á Washington, á la Libreria del Congreso, en doscientos ochenta y nueve cajas, conteniendo 2246 legajos, se refiere á toda clase de asuntos en tal grado de desorden que no era posible obtener la prueba interesada.

*Resultando* que la parte demandada propuso, como prueba que se solicitara del Archivo General de esta Isla, el texto oficial ó copias autorizadas de las Reales Cédulas de concesión de 30 de Marzo de 1782 y 13 de Mayo de 1783, de las Reales Cédulas de 4 de Julio y 25 de Setiembre de 1776, del Real Decreto de 15 de Septiembre de 1852, de las Reales órdenes de 8 de Abril y 20 de Enero de 1857, y de las Circulares de la Junta de terrenos baldíos de 3 de Julio y 27 de Diciembre de 1854; pero sólo fueron remitidos los libros de la Junta de terrenos baldíos de primero de Septiembre de 1843, á 19 de Septiembre de 1863, y de 1866 á 1873, el expediente

relativo á los terrenos del Duque de Mahón Crillon, la copia
de la circular de 3 de Junio de 1854, revertiendo á la Corona de
España los terrenos concedidos al Duque de Mahón Crillón,
por no haber llenado las condiciones necesarias, una copia
de la minuta del aviso dado á los herederos del Duque de Ma-
hón Crillón, por conducto del Consul Francés en esta isla,
con fecha 7 de Junio de 1856, cuyo aviso copiado á la letra
dice así:

"Comunicación al Sr. Consul de Francia en esta isla.—La Junta
de Repartimiento y distribución de terrenos baldíos de esta isla, des-
pués de haber examinado el expediente sobre la concesión hecha por
los Señores Don Carlos III y Don Carlos IV al Duque de Crillón; la
Real Orden de 15 de Septiembre de 52, que declaró se estaba en
el caso de obrar sin demora á la reversión de las 27 caballerías que
sin cuidado ni cultivo del concesionario, se hallaban en Rio Grande
y Lares; el expediente en que recayó esta declaración; y por último
la Real Orden de 13 de Diciembre de 54 á que dió lugar la reclama-
ción últimamente hecha por la sucesión del Excmo. Sr. Duque; acordó
en sesión de etc., que por conducto de V. S. se entere á dicha Suce-
sión de que si aún cree conservar algunos terrenos de los que le fue-
ron concedidos en Fajardo, Naguabo ú otro punto cualquiera, nom-
bre apoderado que exhiba la mensura y deslinde de ellos y los ponga
en cultivo dentro de un año, en los términos que prescribe la circu-
lar de que acompaño copia; y satisfaga los Reales derechos, pues en
este caso serán respetados los que le asistan; pero en otro, serán de-
clarados revertidos, conforme á dicha Circular.  En virtud de dicho
acuerdo y para que la sucesión del Excmo. Sr. Duque no pueda de-
cirse desairada, no obstante que nunca podría sostener el principio
de que las autoridades deben dirigirse á todos y cada una de las per-
sonas á quienes puedan afectar sus determinaciones, lo comunico á
V. S. para el fín indicado.—Dios &.—7 Junio 1856.—Sr. Consul de
Francia en esta Isla.  Techo."

Y finalmente una copia de una comunicacion de la Presi-
dencia de la Junta Superior de terrenos baldios al Gobierno
de esta Isla, su fecha 31 de Marzo de 1869, y de otra comuni-
cación del Presidente del Consejo de Administración, su fecha
14 de Junio del mismo año, relativos ambos documentos á una

instancia dirigida con fecha de 25 de Julio de 1865, al propio Gobernador por el Conde de Sambuy en representación de la Duquesa de Mahón Crillón, acompañada de varios documentos pára que se conservaran éstos en el Gobierno y las autoridades competentes pudieran velar sobre la concesión del Sr. Rey Don Cárlos III y sobre la fundación del Duque de Mahón, Conquistador de Menorca.

*Resultando* que en el acto de la vista del juicio el Abogado de la parte demandante y el Ministerio Fiscal informaron sobre la excepción dilatoria de falta de personalidad en el demandante, la cuál fué declarada sin lugar, habiendo alegado luego ambas partes sobre el fondo del pleito cuanto estimaron conducente á sus respectivas pretensiones.

*Resultando* que el Tribunal de Distrito de San Juan, por mayoría de votos, dictó sentencia en primero de Agosto de mil novecientos dos, declarando con lugar la demanda y en su consecuencia que son de la propiedad del demandante los terrenos sitos antes en la jurisdicción del Pepino, hoy en la de Lares, á que se refiere la certificación librada por el Hon. Tesorero de esta Isla, en 14 de Septiembre de 1900, en virtud de la cuál las cuatro mil ciento treinta y tres cuerdas de terreno, que dicha certificación expresa, fueron inscritas por orden del referido Tesorero como pertenecientes al Pueblo de Puerto Rico, al folio 51 del tomo 28 del Ayuntamiento de Lares, finca número 1677, inscripción 1ª., en el Registro de la Propiedad de Aguadilla, con fecha 16 de Septiembre de dicho año 1900, mandando que esas tierras queden á la libre disposición del demandante, y que la expresada inscripción se cancele, sin hacer especial condena de costas.

*Resultando* que contra esa sentencia interpuso la representación de la parte demandada recurso de casación por quebrantamiento de forma y por infracción de ley, que le fué admitido; y elevados los autos á esta Corte Suprema, previa citación y emplazamiento de las partes, fué tramitado dicho recurso como de apelación, á virtud de lo que dispone la ley

de la Asamblea Legislativa de 12 de Marzo del año próximo pasado, que transformó el Tribunal Supremo de casación, en Corte de Apelación, habiendo alegado ambas partes, por escrito, cuanto estimaron conveniente en defensa de sus respectivos derechos, y celebrándose luego la vista del pleito con asistencia de los representantes de las partes recurrente y recurrida.

Abogado del apelante: *Sr. del Toro, Fiscal.*

Abogado del apelado: *Sr. Acuña (Eduardo).*

EL JUEZ ASOCIADO SR. FIGUERAS, después de exponer los hechos anteriores, emitió la opinión del Tribunal.

*Considerando* que el buen método aconseja analizar en primer término aquellas cuestiones que, como previas al fondo de la cuestión de propiedad, se han presentado por el demandado, tanto en la contestación de la demanda, como en el escrito de formalización del recurso de apelación ante esta Corte Suprema;

*Considerando* que la primera que se presenta al estudio y consideración es la referente á la falta de personalidad que como excepción dilatoria alegó el Fiscal en nombre de "El Pueblo de Puerto Rico" al contestar la demanda, fundándose en que el actor debió justificar cumplidamente el carácter y la representación con que reclama, porque si es á título de Mayorazgo, falta, según él, la justificación de la existencia del mismo, por medio de la escritura de su fundación y si es á título de herencia, ha debido comprobarse por medio de la documentación, y pruebas correspondientes, que los bienes que se reclaman han venido por un orden de sucesión, extricto y legal, ó por testamento, con arreglo á ley, á la pertenencia de la misma parte demandante;

*Considerando* que en este pleito no se trata de nada que se refiera á Mayorazgos, ni la cuestión está empeñada entre personas que se disputen el disfrute del beneficio del vínculo; pero aún esto supuesto arguendi gratia, siempre resultaria que las deficiencias que el Fiscal señala se refieren á la ausen-

cia de los documentos en que el actor funda en tal caso su derecho á la cosa que reclama, y esto, denominándose ''sine actiones agis,'' afectaría al fondo de la cuestión, artículo 503 de la Ley de Enjuiciamiento Civil, de donde resulta que la parte demandada ha confundido, esa carencia de acción, con la falta de personalidad á que se refieren el número 2º del artículo 502 y 532 de la ya citada ley de procedimientos:

*Considerando* que con estos dos últimos preceptos enunciados anteriormente, ha cumplido el actor, supuesto que reclamando sus derechos .como legatario de la Duquesa de Mahón Crillón, ha justificado ese carácter con el testamento de dicha Sra. y con su partida de defunción, por donde está perfectamente definida su personalidad, personalidad que por otra parte de antemano está reconocida por la entidad administración, y que hoy su representante no puede validamente desconocer;

*Considerando* que la segunda cuestión que surge es la propuesta por el Fiscal en los términos siguientes: ''que sólo al Presidente de los Estados Unidos de América, ó en su caso al Gobernador de Puerto Rico ,corresponde dictar la resolución que dejó en suspenso la Reina de España;'' pero se pierde de vista un punto importante y es que no se trata hoy de dictar, ó nó, una resolución de carácter administrativo, concediendo ó negando terrenos que correspondan á una ú otra entidad política de las citadas anteriormente, para lo cuál es claro que no tiene facultades este Tribunal, sino que se trata de un título de amparo de terrenos, que constituye uno de propiedad, y que arranca nada menos que del 10 de Marzo de 1830, robustecido con el Decreto de 7 de Abril de 1859, y se discute en este pleito si esa propiedad ha subsistido hasta hoy en la sucesión del tiempo y si con actos y hechos contrarios á la ley se ha despojado al actor de todos y cada uno de los derechos que la tal propiedad entraña;

*Considerando,* que si esto es lo cierto, corresponde indiscutiblemente á la autoridad judicial dispensar á la propie-

dad privada la protección que ha puesto á su cargo exclusivamente la ley, y en este sentido es evidente que funciona en el Círculo de sus atribuciones al conocer y decidir sobre si se ha cometido ó nó violación contra dicha propiedad, cuestiones éstas que han sido en todo tiempo privativas de los Tribunales ordinarios;

*Considerando* que esos mismos principios están consagrados en la sabia Constitución de los Estados Unidos al garantizar en el artículo 5º. como derecho del ciudadano el que nadie pueda ser desposeído de sus bienes sin preceder el adecuado juicio y esto, como es natural, tiene que ser ante la autoridad judicial correspondiente, cuyo poder hay que reconocer y acatar cuando, como en el presente caso, de cuestiones de propiedad se trate.

*Considerando* que, entrando ahora en la verdadera y única cuestión de fondo, hay que decidir si se han probado todos y cada uno de los requisitos indispensables en todo pleito en que se ejercita la acción reivindicatoria, cuáles son, en primer término, el dominio, y en segundo la identificación, de la cosa que se trata de reivindicar.

*Considerando* que al proceder á dicho estudio hay que atenerse, como es lo procedente, á los documentos públicos expedidos por autoridad competente, que se han traido á estos autos en el período oportuno, y que no han sido redarguidos de falsos, ni civil, ni criminalmente, y á aquellas probanzas que con citación contraria se han practicado, prescindiendo de todo antecedente que sólo pueda servir como medio de illustración, sin ser una verdadera prueba con todos los requisitos que la ley exige.

*Considerando* que es un hecho reconocido, por el Fiscal, en representación de la parte demandada, que se concedieron tierras, en esta Isla, al Duque de Crillón, de Mahón, más tarde, á virtud de Reales cédulas de 4 de Julio y 25 de Septiembre de 1776, cuya concesión se ratificó por Real Cédula de 19 de Julio de 1792.

*Considerando* que el actor, Mr. Pierre Enmanuel, Barón de Laurens d' Oiselay, ha justificado cumplidamente que las tierras que se discuten han sido poseídas, no sólo á nombre del Duque, sino también á nombre de la Duquesa, causadante del actor, desde 22 de Abril de 1829, reconociendo, además, dicha posesión, la misma Junta en el acta de la sesión de 3 de Abril de 1854, en que declaró baldíos los terrenos de que se trata, é integra cumplidamente el derecho dominical del demandante el título de amparo de los terrenos en cuestión, expedido con facultades para ello, por el Capitán General, Don Miguel de Latorre, á favor del Duque de Mahón Crillón, en 10 de Marzo de 1830.

*Considerando* : que el acuerdo de la Junta de Terrenos baldíos, tomado en la sesión de 3 de Abril de 1854, al declarar revertidos á la Corona los reclamados en este litigio, bajo el fundamento de que estaban abandonados, no puede tener el alcance y trascendencia que se le viene dando en este pleito, ó sea, el de haber borrados los derechos que arrancan de los títulos y actos de que se deja hecho mención, porque ese acuerdo se tomó sin perjuicio de dar cuenta á la Reina, lo que no consta que se cumpliera, y porque debe entenderse que ese acuerdo se dejó sin efecto, por la Real Orden de 8 de Abril de 1857, recaída á instancia del representante legal de la Duquesa de Mahón, cuya soberana resolución mandó suspender los efectos del aviso que se dió en consecuencia de dicho acuerdo, á los herederos del Duque, por conducto del Cónsul Francés, y todavía vá más allá la referida disposición, puesto que también ordenó que de *ningún modo* se adjudicase á nuevos concesionarios los terrenos aún no reducidos á cultivo, y todo esto bajo la reserva expresa de hasta tanto que la Reina no resuelva definitivamente sobre este asunto, lo cuál quiere decir que el acuerdo de la Junta de Terrenos baldíos, no tuvo el carácter de definitivo, y entendiéndolo así el Capitán General Cotoner, trasladó esa Real Orden á la repetida Junta, en 21 de Julio de 1857, es decir, á la misma

entidad que tomo el acuerdo de reversión, según puede verse
á los folios 27 al 31 inclusive de los autos, en donde consta
la aludida instancia, y la copia de la citada Real Orden, cuyos
documentos hay que aceptar como auténticos por no haber
sido impugnados, en ningún sentido, por la parte demandada.

*Considerando*: que para robustecer más la creencia de
que el tan repetido acuerdo no llegó á producir efecto legal
de ninguna especie, viene la Orden del Gobernador General
de esta Isla, fechada en 7 de Abril de 1859, mandando dar de
nuevo posesión al Conde de Sambuy, como representante de
la sucesión del Duque de Mahón, y no cabe afirmar que esa
orden dejó de cumplirse, porque no se haya traido á estos
autos el expediente en que debe constar el acta de posesión,
puesto que al fólio 37 consta una certificación expedida
por Don Cárlos Budet y Texidor, Secretario del Ayun-
tamiento de Lares, en la que, refiriéndose al libro de corres-
pondencia, perteneciente al año de 1859, que se encuentra en
el Archivo de aquél Ayuntamiento, se copia la minuta del
oficio de 4 de Junio de 1859, de remisión del expediente ins-
truido por dicha Alcaldía de Lares sobre la posesión dada al
Conde de Sambuy, en la representación que entonces osten-
taba, de las veinte caballerías y dos tercios de terrenos, en el
barrio del Cibao, de aquél término municipal.

*Considerando*: que si el expediente de posesión dada, que
consta remitido al Gobernador General, se extravió en su
oficinas y no ha sido, por tanto, posible, traerlo á estos autos,
no puede ese accidente, independiente de la voluntad del ac-
tor, perjudicarle en sus derechos, cuando, como en el presente
caso, se ha comprobado el hecho de la posesión conferida,
como consecuencia del mandato del Gobernador, con esa mi-
nuta de fecha remota, de cuya autenticidad no puede dudarse,
porque se refiere á lo que consta del Archivo de 1859, y por-
que esa certificación expedida por el Secretario en que se
inserta la minuta del oficio de remisión del expediente que
trataba de la posesión dada, seguramente con todas las forma-

lidades, está visada por el Alcalde accidental de Lares, y sellada con el sello de dicha Alcaldía, formalidades todas esas que alejan toda idea de falsedad, porque el Secretario que expidió la certificación, que es el encargado de la custodia de la minuta, sabia que la expedia bajo su responsabilidad, según la regla 4ª. del artículo 596 de la Ley de Enjuiciamiento Civil.

*Considerando*: que esa certificación comprensiva de la minuta del oficio de remisión del expediente, sobre la posesión conferida, tiene el carácter de documento público y solemne, según el número 4º. del art. 595 de la citada Ley de Enjuiciamiento Civil, porque es copia sacada y autorizada por el Secretario encargado del Archivo por mandato de la autoridad competente, como es el Alcade.

*Considerando,* por último, que es costumbre admitida para el buen orden de las oficinas, y precisamente para evitar las responsabilidades del extravío de las diligencias que se cursan, conservar las minutas, y en este caso esa conservación ha venido á salvar la prueba de un hecho importante en el pleito, cuál es el de la posesión consumada, y que no puede negarse hoy, sin antes probar la falsedad de la minuta del oficio, cosa que no se ha intentado, ni dudado siquiera de la existencia de la minuta original; y siendo esto así, hay que afirmar que se dió la posesión, porque la repetida minuta es eficáz en este juicio, y porque negar la posesión dada, y aceptar la veracidad de la minuta, sería una verdadera inconsecuencia.

*Considerando*: que robustece también el hecho de la posesión, el también probado y admitido por el Fiscal, de que por el Duque de Mahón ó por su sucesión, ó por la Duquesa de Mahón Crillón se satisficieron las contribuciones de dichos terrenos desde el año 1862, hasta el año de 1899, ó sean treinta y siete años, circumstancia, esta última, de la que se deriva la presunción de que dichos terrenos estaban cultivados, porque hasta el cambio de soberanía y aprobación de la vigente ley de Rentas

en primero de Marzo de 1902, la contribución se imponía bajo la base de las utilidades, y si éstas no existían, por falta de cultivo, no pudieron imponerse, ni satisfacerse esas contribuciones.

*Considerando*: que este juicio, en que se ha ejercitado la acción reivindicatoria, se ha dirigido contra el que, según el actor, ha cometido un verdadero despojo, ó sea contra El Pueblo de Puerto Rico, que es el que aparece de la Oficina pública del Registro de la Propiedad, como detentador de los derechos de propiedad, que á aquél corresponden, y no puede ser obstáculo para el éxito de la acción que se ejercita, la circunstancia de no haberse también dirigido contra otros que sólo, por simple insinuación, se dicen que poseen los terrenos en cuestión, porque no consta el título en virtud del cual posean y porque cabe en lo posible, que estén poseyendo como colonos del mismo demandante, pero de todos modos, no habiendo sido partes en este litigio, en nada puede perjudicarles la resolución que aquí se dicte, quedando en todo caso, sus derechos á salvo de todo prejuicio y perjuicio, toda vez que pueden discutirlo en el juicio correspondiente, en que se aquilate el valor de sus títulos, si los tienen, y de las demás probanzas que puedan aportar.

*Considerando*: que por Real decreto de 17 de Abril de 1884, se aprobó el Reglamento para la composición de terrenos realengos en esta Isla, y ese Reglamento, en su artículo segundo y tercero, dice:

"Art. 2º.—Se considerarán propietarios, para los efectos legales de este Reglamento, los que acrediten haber adquirido los terrenos mediante Real Cédula, concesión de la *Junta Superior de repartimiento de terrenos baldíos*, ó título de autoridad competente, y haber cumplido las condiciones que por la concesión les fueron impuestas, cualquiera que sea el tiempo que lleven de posesión.

Igualmente se considerarán propietarios los que, careciendo de título, acrediten haber poseído, sin interrupción, los expresados terrenos, durante veinte años, si se encuentran en cultivo, y durante treinta, si se hallan incultos.

Para que se entienda cultivado un terreno es necesario acreditar que lo ha estado en los tres años últimos.''

''Art. 3º.—Todas las concesiones de terrenos en general, y en especial, las verificadas desde el año 1850 hasta la fecha, en que no se hayan cumplido las condiciones impuestas, se declaran insubsistentes y revertidos los terrenos al Estado.''

*Considerando*: que por Real Orden de 20 de Agosto de 1888, publicada en la Gaceta de esta Isla del 11 de Octubre del mismo año, se resuelve ''Que el artículo 3º. del Reglamento, quede reformado en los términos siguientes:

''Las concesiones de terrenos en general, y en especial las ''verificadas desde el año de 1850 hasta 1884, en que no se ''hayan cumplido las condiciones impuestas, se declaran ''insubsistentes y revertidos los terrenos al Estado, á no ser ''que los concesionarios vengan poseyéndolos desde más de ''treinta años, que es el plazo señalado para la prescripción ''en los terrenos incultos, y poseídos sin título, por el artículo ''anterior.''

*Considerando*: que aún suponiendo que se poseyese sin título, y que los terrenos en cuestión estuviesen incultos, hay que declarar, en virtud de la Real Orden y del Reglamento anteriormente citados, que el actor es el propietario de lo que hoy reclama, porque la concesión queda subsistente y no pueden hoy considerarse esos terrenos revertidos al Estado.

*Considerando*: que se han justificado los requisitos inherentes al ejercicio de toda acción reivindicatoria, cuáles son, el dominio y la identificación de la cosa que se reclama, que es con toda evidencia la porción de terrenos descrita é inscrita en el Registro de la Propiedad, cuyo acto debe, asimismo, declararse nulo, si han de respetarse los efectos del dominio que en favor del demandante existe, y si ha de prevalecer el principio consignado en el artículo 4º. del Código Civil reformado, de que son nulos los actos ejecutados contra lo dispuesto en la ley, y nula es por tanto la dicha inscripción, que se ordenó sin ningún derecho y sin cumplir con los requisitos

que la ley exige, errores que reconoció más tarde el mismo
Hon. Tesorero de esta Isla, como lo demuestra su oficio de 4
de Junio de 1901, en el cuál, dirigiéndose al representante del
actor, le dice, que si hubiera tenido á la vista los documentos,
que son los traidos á estos autos, no hubiera procedido como
procedió y esta paladina y honrada manifestación viene,
también, á confirmar el derecho del demandante.

*Considerando* lo dispuesto en la regla 63 de la Orden
General número 118, serie de 1899.

*Vistas* las disposiciones citadas y las pertinentes que en
la sentencia apelada se citan, con la ley de la Asamblea Legis-
lativa aprobada en 12 de Marzo de 1903, y los artículos 358
364 y 371 de la Ley de Enjuiciamiento Civil.

*Fallamos* que debemos confirmar y confirmamos la sen-
tencia que dictó la Corte del Distrito de San Juan en primero
de Agosto de mil novecientos dos, sin hacer expresa condena-
ción de las costas de este recurso; comuníquese esta sentencia
y devuelvanse los autos al Tribunal de su orígen.

Jueces concurrentes: Sres. Presidente Quiñones, y Aso-
ciado, Sulzbacher.

Jueces disidentes: Sres. Hernández y MacLeary.

*Opinión disidente de los Jueces Asociados Sres. Hernández
y MacLeary.*

Los Jueces Asociados que suscriben no están conformes
con la anterior sentencia, dictada por la mayoría de sus com-
pañeros, y en su lugar formulan su opinión en los términos
siguientes:—

*Aceptan* los fundamentos de hecho de la expresada sen-
tencia y los adicionan, con los siguientes:

*Resultando*: que según informe que en copia obra en au-
tos, y que por orden de la Junta de Terrenos baldíos emitió
su Vocal Don Lucas García Ruiz, en ocho de Marzo de 1869,
el Conde de Sambuy, en representación de los derechos de la
Sucesión del Duque de Mahón dirigió con fecha 25 de Julio de
1865, al Gobernador General de esta Isla, una instancia acom-

pañando dos documentos públicos otorgados en Avignon, de Francia, en 10 del citado Julio, á saber, un poder general que la Duquesa de Mahón otorgó á favor del Conde de Sambuy, y un instrumento público en el que, entre otras cosas, se reconocían en favor de la Srta. María Antonia Gabriela Balbo Berthone de Grillon, el título ducal de Mahón con la Grandeza de España de 1ª. Clase, y el Mayorazgo instituido para esas dignidades, por escritura otorgada en Madrid el 17 de Agosto de 1794, asignándose á dicho Mayorazgo las tierras cedidas al Duque de Mahón, según título expedido por el Capitán General, Don Miguel de Latorre, en 10 de Marzo de 1830, y adjudicándose á los demás herederos las tierras restantes que en esta isla eran del Duque de Mahón, cuyos documentos presentaba el Conde de Sambuy, según su manifestación, para que se conservaran en el Gobierno con los demás referentes al Duque de Mahón, tomándose antes razón de ellas en la Contaduría General, Audiencia del Territorio, Alcaldía de Lares y Anotación de Hipotecas, á fín de que las autoridades competentes pudieran velar sobre la concesión del Rey Don Cárlos III y sobre la fundación del Duque de Mahón, Conquistador de menorca, documentos que con la instancia fueron remitidos por el Gobernador General, para informe, á la Junta de Terrenos baldíos, habiendo comisionado dicha Junta á su Vocal Don Lucas García Ruiz para la redacción del informe pedido.

·*Resultando* : que el citado Vocal, examinados los antecedentes necesarios, estimó que procedía informar al "Excmo. Sr. Gobernador Superior Civil" "que no pudiendo ser aquella sucesión (la del Duque de Mahón) considerada como dueña del terreno mencionado en la forma indeterminada en que se presenta, si la expresada sucesión ó su representante entendieran conveniente el sostener ó reivindicar el dominio sobre tales tierras, preciso es que éstas se determinen, y caso de que resultaren en cultivo ó usufructo, que la misma sucesión ó representantes de los Duques hubieren otorgado, habrá de

respetarse su derecho en ellas, más si encontraren oposición en otros particulares que con diferente título lleven las tierras en cultivo, tendrá necesidad la representación de los Duques de acudir á los Tribunales de Justicia, únicos competentes para entender en las contiendas sobre propiedad, y por último, que si baldías y no ocupadas, aparecieren las tierras, será de las facultades de la Junta el conocer sobre la validéz ó nulidad de la concesión, según estime procedente.    Puede así mismo informarse al Excmo. Sor. Gobernador Superior Civil, que de los instrumentos públicos dirigidos por el Sr. Conde de Sambuy, con su carta de 25 de Julio de 1865, no procede, según las disposiciones vigentes, tomar razón en la Audiencia del Territorio y Contaduría General, ni puede, de oficio, prevenirse que se tome razón en las Anotaciones de Hipotecas respectivas.    Ofrécese en la carta y escrituras remitidas por Conde de Sambuy, otro particular, y es, el referente á la institución de un Mayorazgo para el Ducado de Mahón y Grandeza de España, que le es aneja, vinculando al efecto, y con aquél objeto, una de las cuatro leguas de terrenos cedidas en la isla al primer Duque.  Ya por ser anteriormente necesaria la Real licencia para vincular bienes, ya porque en el día está prohibida la fundación de Mayorazgos, pudiera indicarse que como contrarias á nuestra legislación vigente, parece que no pueden tener en la isla efectos legales el gravamen y trabas constitui-tener en la isla efectos legales el gravámen y trabas constituidas sobre la dicha legua de terreno, por la escritura de Avignon. En los términos expuesos, ú otros que la Junta estime más procedentes, pudiera evacuarse el informe reclamado por el Excmo. Sr. Gobernador Superior Civil, Puerto Rico, Marzo 8 de 1869.   García Ruiz.''

*Rsultando*: que la Junta de terrenos baldíos se conformó con el informe de su Vocal, y también lo aceptó el Consejo de Administración, recomendando resolución en el mismo sentido, con fecha catorce de Junio de 1869, sin que conste lo que resolviera el Gobernador.

*Resultando* : que en cumplimiento del acuerdo del Tesorero de Puerto Rico, de 4 de Septiembre de 1900, según consta en expediente que ha venido al juicio, al ser requeridos los poseedores de los terrenos que reclama como suyos el demandante, ninguno de ellos presentó título de propiedad, y muchos manifestaron que el título de la concesión que se les hizo en el año 1854, existía archivado en la Alcaldía de Lares.

*Resultando* : que también en cumplimiento del expresado decreto del Tesorero, vinieron á figurar en el Reparto de la contribución territorial para el año económico de 1900 á 1901, los poseedores de los terrenos de que se trata, con el número de cuerdas que cada uno de ellos poseía, y que ascienden en su totalidad á 3,826 cuerdas con 50 céntimos de otra.

*Aceptan* los Jueces disidentes, además de los Resultandos de la sentencia dictada, los Considerandos 1°, 2°, 3°, 4°, 5°, y 6°, de la misma, adicionándolos con los siguientes :

*Considerando* : que la acción reivindicatoria del dominio de una cosa solo puede prosperar cuando, además de acreditarse el dominio y la identidad de la misma, se ejercita aquélla contra el tenedor ó poseedor de la cosa que se trata de reivindicar, según así lo declaró esta Corte Suprema en sentencia de 24 de Octubre de 1900, conforme con la Jurisprudencia del Tribunal Supremo de Justicia de España, anterior á la extinción de su soberanía en esta Isla.

*Considerando* : que si bien aparece justificado en el juicio, que el Duque de Mahón Grillón fué puesto en posesión de los terrenos de que se trata, en 22 de Abril de 1829, y el 10 de Marso del año siguiente, se le expidió título de amparo de los mismos, obteniendo así un verdadero título de propiedad, no absoluto é irrevocable, sino sujeto á las condiciones que regulaban la concesión de terrenos baldíos, dicho título quedó sin efecto desde que la Junta de terrenos baldíos, por acuerdo de 3 de Abril de 1854, previa formación del oportuno expediente, declaró revertidos aquellos terrenos á la Corona de España, atendido el estado de abandono en que se encontraban.

· *Considerando* : que el expresado acuerdo de 3 de Abril de 1854 fué dictado en cumplimiento de Real Orden de 15 de Septiembre de 1852, que declaró se estaba en el caso de proceder sin demora á la reversión de las 27 caballerías que sin cuidado, ni cultivo del concesionario, se hallaban en Rio-Grande y Lares, y por tanto la fórmula que contiene el acuerdo "sin perjuicio de dar cuenta á la Reina de tal determinación", no puede significar que no surtiría desde luego efectos legales, ó que quedaría en suspenso hasta que descendiera la real aprobación, sino que era eficáz hasta que fuera modificado ó derogado por la Soberana de España; y tan es así, que la misma Junta de terrenos baldíos, en acuerdo posterior, á pedimento de la Junta Municipal de Lares, que manifestaba la conveniencia de que fueran agraciados setenta y cuatro vecinos con los terrenos que estaban poseyendo de los que pertenecieron al Duque de Mahón Grillón, acordó la concesión á tales poseedores, bajo condición de que los terrenos de cada uno no pasaran de cien cuerdas y en el término de dos meses se sacaran las oportunas comisiones para la mensura.

*Considerando* : que la Real Orden de 8 de Abril de 1857 no dejó sin efecto el acuerdo de la Junta de terrenos baldíos, de 3 de Abril de 1854, ni la concesión hecha posteriormente á 74 poseedores de los terrenos que habían pertenecido al Duque de Mahón Grillón, sino que dispuso, en vista de una instancia de la Duquesa de Mahón Crillón á la Reina de España, en demanda de prórroga de tiempo para la reversión al Estado de los terrenos concedidos al primer Duque de Mahón Crillón, se informara á la autoridad real sobre los antecedentes y estado del negocio, y se diera parecer sobre el modo de conciliar los intereses de familia del Duque con los de la Agricultura de esta Isla, suspendiéndose hasta tanto dictara la Reina resolución definitiva, los efectos del aviso que por conducto del Cónsul de Francia se había dado á los herederos del Duque, sin adjudicarse en el interín, de ningún modo, á nuevos concesionarios, los terrenos aún no reducidos á cultivo; y como

el aviso á la sucesión del Duque, por conducto del Consul de Francia, tuvo por objeto enterarla de que, si aún queriá conservar algunos terrenos de los que la fueron concedidos en Fajardo, Naguabo ú otro punto cualquiera, no se menciona expresamente á Lares, nombrara apoderado que exhibiera la mensura y deslinde de ellos y los pusiera en cultivo, dentro de un año, satisfaciendo los derechos reales, pues en ese caso serían respetados los que la asistieran, y de lo contrario, se revertirían á la Corona, conforme á la Circular cuya copia se acompañó al aviso, es claro que ese aviso, cuya minuta obra en autos, y es de fecha 7 de Junio de 1856, no se refiere al acuerdo de la Junta de terrenos baldíos, de 3 de Abril de 1854, y por tanto, la Real Orden de 8 de Abril de 1857, no es derogatoria del repetido acuerdo, ni suspendió los efectos del mismo, con tanta mayor razón cuanto que el aviso se refiere á terrenos no revertidos á la Corona de España, como lo habían sido los que son materia del juicio, y la Real Orden sólo prohibe el otorgamiento de nuevas concesiones, sin anular las que se hubiesen hecho, como las de los setenta y cuatro vecinos de Lares.

*Considerando* que en corroboración de que la Real Orden de 8 de Abril de 1857 no dejó sin efecto el acuerdo de la Junta de terrenos baldios de 3 de Abril de 1854, concordante con la Real Orden de 15 de Setiembre de 1852, viene la otra Real Orden de 20 de Enero de 1859, en que la Reina de España ordena al Gobernador General de esta Isla preste al Conde Manfredo Bertone de Sambuy toda la protección y facilidades que por su rango merecía, á fin de que practicara las gestiones convenientes para reivindicar los terrenos heredados por su hija política y pupila, la Señorita Da. María Berton de Crillón, Duquesa de Mahón y Grande España de 1ª Clase, sin que se ordenara la restitución de terrenos determinados á la expresada Señorita, por lo cuál es claro que el decreto del Gobernador General de esta isla, de 7 de Abril de 1859, ordenando que la representación del Duque de Mahón fuera po-

sesionada nuevamente de los terrenos que le fueron expropiados por los linderos que marcaran los planos y documentos que produjera, dejando á salvo los derechos de los que se hallaran poseyéndolos en todo ó en parte, los que se ventilarían donde y en la forma que correspondiera á derecho, léjos de estar conforme con aquélla real orden, que era meramente de protección ó recomendación, está en abierta contradicción con la misma, pues el Gobernador en vez de prestar facilidades y protección al mencionado Conde, para la reivindicación de los terrenos que pretendía, le otorgó la posesión de ellos, que era función propia de la Junta de terrenos baldíos, po ser ésta la que había ordenado la reversión de dichos terrenos á la Corona de España.

*Considerando* que la copia del oficio de 4 de Junio de 1859, dirigido al Gobernador General de esta Isla, en que se manifiesta, por la Alcaldía de Lares, que tiene el honor de elevar á aquella superior autoridad el expediente instruido sobre la posesión dada al Conde de Sambuy, como representante de la Sucesión del Duque de Mahón Crillión, de 20 caballerías y dos tercios de terreno en barrio de Cibao de la jurisdicción de dicho pueblo, todo en virtud de la comunicación de dicho Gobernador de 7 de Abril del mismo año, que obraba por cabeza del referido expediente, sólo ofrece un principio de prueba escrita, pero no una prueba cumplida y acabada de que el Conde de Sambuy, en la representación indicada, fuera puesto en posesión de esas mismas veinte caballerías y dos tercios de terreno pues semejante prueba solo puede derivarse del acta de posesión correspondiente, y la falta de dicha acta ha debido suplirse justificando por otros medios, á satisfacción del Tribunal, que el decreto de 7 de Abril de 1859, fué debidamente cumplido, no obstante la concesión hecha á 74 vecinos de Lares por la Junta de terrenos baldíos, después de la Resolución de la misma Junta de 3 de Abril de 1854, revertiendo á la Corona de España las tierras del Duque, justificación tanto más necesaria, cuanto que por escritura pública

otorgada en 5 de Julio de 1900, varios individuos, llamándose dueños y poseedores por título derivado de aquella concesión, de las mismas tierras cuyo dominio reclama el demandante, las vendieron, por ocho mil pesos provinciales, á Don Virgilio Acevedo Hernández, y habiendo alegado la parte actora que los concesionarios agraciados por la Junta de terrenos baldíos, en 1854, fueron desposeídos de los derechos adquiridos, y si continuaron en la finca fué en clase de colonos, pagando arrendamiento á la Sucesión del Duque de Mahón, deber suyo era traer á los autos prueba de la existencia del arrendamiento alegado, con cuya prueba hubiera acreditado que los vendedores están poseyendo á título de arrendatarios y que á la Sucesión del Duque correspondía el derecho dominical.

*Considerando* que las certificaciones de contribuciones satisfechas por el Duque de Mahón Crillón, por la Sucesión de dicho Duque, ó por la Duquesa de Mahón Crillón, desde el año de 1862 á 1889, no pueden suplir la falta de prueba de posesión, pues aparte de que esas certificaciones no expresan con claridad y precisión los terrenos á que se refieren, llenarían sólo uno de los requisitos que para justificar posesión de bienes raices exigen los artículos 391 de la Ley Hipotecaria y 436 del Reglamento para su ejecución.

*Considerando* que de los términos en que está redactado el oficio de la Alcaldía de Lares de 4 de Junio de 1859, no es posible deducir con qué formalidades se llevó á efecto la posesión ordenada por el Gobernador General, ni si fué por los mismos puntos que se marcaban en el título de amparo de 10 de Marzo de 1830, ni si hubo reclamaciones, ó nó, por parte de los que estaban poseyendo, ni si esas reclamaciones, en su caso, fueron resueltas por el Alcalde de Lares, ó se reservó su resolución al Gobernador General. ni si los poseedores fueron desposeídos, ó se les permitió que continuaran poseyendo, cuyos datos son necesarios para venir en conocimiento de la naturaleza, extensión y alcance de la posesión que se

diera al Conde de Sambuy, y poder precisar si los terrenos objeto de la posesión, son los mismos que el demandante reclama como de su propiedad.

*Considerando* que la representación de la parte demandante ha presentado como justificantés del dominio alegado la documentación que á ese fín le pareció oportuna; y por lo que se deja expuesto no es bestante para la justificación de dicho dominio; pero no ha alegado la prescripción como medio de adquirirlo, y por tanto no pueden invocarse en apoyo de su derecho los artículos 2º, y 3º, del Reglamento para la composición de terrenos realengos en esta Isla,, aprobado por Real Decreto de 27 de Abril de 1884, ni la Real Orden de 20 de Agosto de 1888, que modifica el artículo 3 de dicho Reglamento; pero aún en el supuesto de que oportunamente se hubiera alegado la prescripción, debería ésta desestimarse, por cuanto el demandante no ha justificado, como era de su deber, la posesión no interrumpida de los terrenos de que se trata por más de treinta años.

*Considerando* que según los artículos 348, y 430 del Código Civil antíguo, que son los 354 y 433 del actualmente vigente, el propietario tiene acción contra el tenedor y el poseedor de la cosa para reivindicarla, y la posesión natural es la tenencia de una cosa ó el disfrute de un derecho por una persona, siendo posesión civil esa misma tenencia ó disfrute, unidos á la intención de haber la cosa ó derecho como suyos; y que por tanto, no siendo poseedor El Pueblo de Puerto Rico, de los terrenos de cuyo dominio se trata en el presente juicio, no ha podido ejercitarse contra él la acción reivindicatoria, la que ha debido dirigirse contra los que estaban poseyendo y disfrutando dichos terrenos, y aún hoy, los poseen y usufructúan, alegando sobre ellos derechos dominicales, según se desprende de la escritura de venta otorgada en 5 de Julio de 1900, á favor de Don Virgilio Acevedo, y de la circunstancia de figurar hoy en el reparto de contribuciones, dichos poseedores, á virtud de la orden del Tesorero de esta Isla de 4 de Setiem-

bre de 1900, sin que la inscripción de posesión, hecha en el Registro de la Propiedad de Aguadilla, á favor de El Pueblo de Puerto Rico, sea bastante para dar á éste el carácter de poseedor, de que venía careciendo, pues tal inscripción no puede convertir en real y verdadero, un hecho que no lo es.

*Considerando* que la certificación expedida por el Tesorero de Puerto Rico, en 14 de Septiembre de 1900, para que se llevara á efecto, en el Registro de la Propiedad de Aguadilla, á favor de El Pueblo de Puerto Rico, la inscripción de posesión de los terrenos vendidos por escritura pública de 5 de Julio del mismo año, á Don Virgilio Acevedo y Hernández, no llenaba los requisitos que exige el artículo 36 del Reglamento para la ejecución de la Ley Hipotecaria, ni tampoco podía llenarlos, pues el más fundamental de esos requisitos, ó sea la posesión de los terrenos de que se trata, faltaba en el presente caso, por la razón clara y evidente de que El Pueblo de Puerto Rico no estaba poseyendo dichos terrenos, siendo por tanto nula la inscripción que de la posesión se hizo en el referido Registro de la Propiedad.

*Considerando*: que según la sección de la Ley de la Asamblea Legislativa de 12 de Marzo del año próximo pasado, transformando el Tribunal Supremo de Puerto Rico, de Corte de Casación, en Corte de Apelación, este Tribunal, en sus deliberaciones y fallos, no se limitará sòlamente á infracciones de ley ó quebrantamientos de forma, según fueren señalados, alegados ó salvados por los litigantes, ó según se hicieran constar en sus exposiciones y excepciones, sino que, con el más alto fín de justicia, puede también entender en todos los hechos y tramitaciones, tal como aparecieren en autos, considerando en igual forma sus méritos para la mejor administración de justicia y del derecho y evitar injusticias y demoras.

En consecuencia de todo lo expuesto, vistos los textos legales ya citados, y las sentencias del Tribunal Supremo de España de 10 de Abril de 1872, 4 de Diciembre de 1888 y 5

de Octubre de 1892, la primera en pleito sobre reivindicación de una finca y pago de maravedís, la segunda en pleito sobre nulidad de deslinde y reivindicación de terrenos, y la tercera en pleito sobre reivindicación, y la sentencia de esta Corte Suprema de 24 de Octubre de 1900, los Jueces que suscriben opinan que desestimándose la excepción de falta de personalidad en el demandante, alegada por la parte demandada, se declare sin lugar le demanda, en cuanto por ella se solicita la declaratoria de propiedad de los terrenos á que se refiere á favor de Mr. Pierre Enmanuel Baron du Laurens d' Oiselay, y con lugar en cuanto á la cancelación de la inscripción de posesión de dichos terrenos, hecha en el Registro de la Propiedad de Aguadilla en nombre de El Pueblo de Puerto Rico, sin perjuicio de que el demandante y demandado puedan ejercitar sus derechos en la forma correspondiente, y contra quién proceda en cuanto al derecho dominical de que se crean asistidos sobre los repetidos terrenos, entendiéndose las costas del juicio y del recurso sin expresa condenación.