MIGUEL D. LAUSELL MARXUACH, demandante y recurrente, *v.* PRISCILA DÍAZ DE YÁÑEZ, demandada y recurrida.

*Número:* R-74-54      *Resuelto:* 11 de marzo de 1975

*Luis A. Archilla Laugier,* abogado del recurrente; *Hartzell, Ydrach, Mellado, Santiago, Pérez & Novas,* abogados de la recurrida.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

El demandante recurrente, abogado, contrajo matrimonio con la demandada recurrida el 5 de junio de 1965. Procrearon dos hijas. Para 1971 surgió un pleito de divorcio entre las partes. En dicho caso se sometió una extensa estipulación, suscrita por las partes y sus abogados respectivos, en que se reconocía que determinada residencia pertenecía a la sociedad de gananciales; se acordaba que su administración recayese en la recurrida; que los alquileres se dividirían por mitad; y que el efectuarse la liquidación final de la sociedad de gananciales le correspondería a cada parte su cincuenta por ciento de la vivienda. El propio día en que se radicó la estipulación ante el Tribunal Superior, el 25 de agosto de 1971, se vio el caso; se declaró con lugar la demanda de la recurrida por la causal de trato cruel; se le fijó una pensión alimenticia de seiscientos cincuenta dólares mensuales; se aprobó la estipulación sobre la división de gananciales y se ordenó su liquidación. No se recurrió de esta sentencia.

Aproximadamente cinco meses más tarde, el 19 de enero de 1972, en un incidente de rebaja de pensión alimenticia promovido por el recurrente, éste ratificó que la casa de referencia pertenecía a la sociedad de gananciales. La pensión se rebajó a trescientos dólares mensuales.

Casi cuatro meses después, en mayo de 1972, el recurrente instó una acción de sentencia declaratoria en la que atacó la estipulación radicada en el litigio anterior y solicitó que se

declarase bien privativo de él la residencia que en ella se menciona. Fundamentó su petición el recurrido en que "la referida estipulación fué [*sic*] el producto de un período de crisis emocional por el cual atravesaba el demandante y hecha con el propósito de acelerar la tramitación de su divorcio." A moción de la recurrida, quien invocó las doctrinas de cosa juzgada e impedimento colateral por sentencia, el tribunal de instancia desestimó la demanda. Es de este fallo que se recurre ante nos.

No tiene razón el recurrente. Existe base para argumentar aquí la procedencia de la excepción de cosa juzgada, mas aun de no poder invocarse ésta, la pretensión del recurrente se enfrenta a obstáculos insalvables.

■ La doctrina de cosa juzgada, *res judicata pro veritate habetur*, es de antigua estirpe romana: De León y Olarieta, *Observaciones filosófico-jurídicas acerca de la autoridad de cosa juzgada*, 44 Rev. Gen. de Leg. y Juris. 5, 15–22 (1874). Es parte de nuestro Derecho Civil y es innecesario, excepto para fines comparativos, acudir a otras fuentes para su análisis. El Art. 1204 de nuestro Código, 31 L.P.R.A. sec. 3343, exige para su aplicación "que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron."

Los dos últimos requisitos se dan claramente. Respecto a la cosa y a la causa, conviene reiterar los principios rectores.

La cosa responde básicamente al objeto o materia sobre la cual se ejercita la acción. Se ha expresado que un criterio certero para determinar la identidad del objeto es el siguiente: si un juez está expuesto a contradecir una decisión anterior afirmando un derecho nacido o naciente, hay identidad de objeto y cosa juzgada. Jiménez Asenjo, E., *Sobre el Alcance Real de la Cosa Juzgada*, 184 Rev. Gen. de Leg. y Juris. 63, 73 nota 1 (1948). La particularidad del actual litigio radica

tan solo en que la adjudicación cubre dos cosas: el decreto de divorcio en sí y la declaración, como base para la futura división de la sociedad de gananciales, de que la vivienda en disputa pertenece a dicha sociedad. El hecho de que en la segunda acción no se impugne el divorcio no evita la excepción de cosa juzgada respecto al intento de anular la determinación referente a la propiedad de la vivienda. Ha afirmado Manresa que "La resolución recaída sobre una totalidad de cosas, envuelve generalmente la de las distintas partes. . . ." Manresa, *Comentarios al Código Civil Español*, to. VIII, vol 2°, 6ª ed. 1967, pág. 297. Según surge de la confesión del propio recurrente en su acción de sentencia declaratoria, además, cuando explica con perturbadora llaneza que firmó la estipulación "con el propósito de acelerar la tramitación de su divorcio", las dos cosas adjudicadas están entrelazadas en tal forma que en realidad vienen a constituir, dentro de las circunstancias presentes, un solo objeto.

En lo que toca a la causa, el término significa "el fundamento capital, el origen de las acciones o excepciones planteadas y resueltas, y no debe confundirse con los medios de prueba ni con los fundamentos legales de las pretensiones deducidas por las partes." Manresa, *op. cit.*, 301. No existe diversidad de causas en el caso ante nos. No hay verdadera distinción de pedimentos entre la segunda y la primera causa, excepto en lo referente a su número. Es como si un recurrente no solicitase que se destruyese la totalidad del edificio representado por una primera adjudicación y se limitase modestamente a pedir que se demuelan tan solo los cimientos o parte significativa de ellos.

Como hemos consignado anteriormente, la regla de cosa juzgada esta "rodeada de interés público, y se dirige a conservar la paz privada, *Cintrón* v. *Yabucoa Sugar Co.*, 54 D.P.R. 518 (1939), a evitar que se eternicen las controversias judiciales y se funda en la conveniencia de dar la debida dignidad a las actuaciones de los tribunales. . . . [L]a defensa de

*res judicata* puede invocarse aunque los fundamentos de la sentencia sean erróneos, siempre que se hubiera dictado con jurisdicción y en ausencia de fraude." *Bolker* v. *Tribunal Superior*, 82 D.P.R. 816, 832–834 (1961).

En *Pérez* v. *Bauzá*, 83 D.P.R. 220, 226 (1961) y en otros casos hemos advertido que si la aplicación rigurosa de la doctrina de cosa juzgada "derrotaría en la práctica un derecho permeado en alguna forma del interés público, los tribunales se inclinan hacia la solución que garantice cumplida justicia, en lugar de favorecer en forma rígida una ficción de ley que obedece fundamentalmente a un principio de conveniencia y orden procesal. . . ." No se trata aquí sin embargo, de una situación comparable a la que motivó la regla de *Pérez*. Por lo contrario, la extensión de *Pérez* a circunstancias como las que enmarcan la actual contienda sería profundamente lesiva a los intereses de la buena administración de la justicia, restándole finalidad a las sentencias en los casos de divorcio en que se sienten las bases para la división o se divida, parcial o totalmente, la sociedad de gananciales.

■ El hecho, por último, de que la cuestión en controversia fue objeto de estipulación y no de litigio contencioso como tal no ayuda al recurrente. Hemos resuelto repetidas veces que la doctrina de cosa juzgada se aplica indistintamente en ambas situaciones. *Ex parte Morales*, 17 D.P.R. 1043 (1911); *Cintrón* v. *Corte Municipal*, 67 D.P.R. 793, 797–798 (1947).

■ Aun asumiendo que no fuese aplicable la excepción de la cosa juzgada en este caso, otras doctrinas militan contra la posición del recurrente. En primer término está la antigua doctrina civilista de los actos propios. Aguilar y García, A.: *Los Actos Propios en la Jurisprudencia del Tribunal Supremo*, 1 Rev. de Derecho Privado 18 (1913). La doctrina se resume en la frase "Nadie puede ir contra sus propios actos" y tiene obvias tangencias con la teoría anglosajona del "estoppel", aunque existen diferencias en su desarrollo y contenido. La doctrina de los actos propios ha sido reconocida hace años por

nuestra jurisprudencia. *Méndez* v. *Administración de Puerto Rico*, 6 D.P.R. 179 (1904); *Enmanuel* v. *El Pueblo*, 7 D.P.R. 221 (1904); *Dávila* v. *Sotomayor*, 36 D.P.R. 780, 784 (1927). Para jurisprudencia española reciente sobre la doctrina véase: S. de 3 de abril de 1973 (Aranzadi Núm. 3795) y S. de 5 de julio de 1973 (Aranzadi Núm. 2947). No habiendo demostrado la inexistencia de causa, la mediación de fraude o dolo o razón de orden público alguna para impugnar lo hecho, el recurrente está impedido de volver sobre sus propios actos, hubiese o no mediado una sentencia sobre el mismo asunto en otro pleito.

Valga apuntar sobre este tema que el Art. 101, ordinales segundo y tercero, de nuestra Ley de Evidencia, Ley de 9 de marzo de 1905, según enmendada, 32 L.P.R.A. sec. 1886(2) y (3), provee base independiente para la doctrina de actos propios y para la utilización del "estoppel" directo. En *Rabell* v. *Rodríguez*, 24 D.P.R. 561 (1916), se equiparan de hecho ambas doctrinas, aunque lo que ha venido sucediendo desde hace años es la extensión a diversos países y al propio derecho internacional de los principios esenciales que informan el "estoppel" inglés, como sucedió aquí al aprobarse la Ley de Evidencia. MacGibbon, *Estoppel in International Law*, 7 Int'l & Comp. L.Q. 468 (1958). En la propia España, algunos comentaristas aluden ya a la debida aplicación de la teoría en el derecho patrio en determinadas situaciones. Puig Brutau, *Fundamentos de Derecho Civil*, to. 1, vol. 2, 1959, págs. 86–87; *ibid.*, to. 2, vol. 2, págs. 648–649.

Es innecesario, no obstante, en vista de las conclusiones anteriores, pronunciarnos sobre la aplicabilidad o no en este caso de la teoría del impedimento directo (*estoppel*) o sobre la doctrina de impedimento colateral por sentencia. Véanse: *Fuentes* v. *Tribunal de Distrito*, 73 D.P.R. 959, 978–980 (1952); *Rodríguez* v. *Albizu*, 76 D.P.R. 631 (1954).

*Por los fundamentos expuestos, se confirma la resolución recurrida.*

Los Jueces Asociados Señores Marco A. Rigau y Carlos V. Dávila no participaron. El Juez Asociado Señor Angel M. Martín concurre en el resultado sin opinión.