# 97 DTA 190

## TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL IV DE MAYAGUEZ Y AGUADILLA

DIEGO GARCIA MONAGAS, JORGE GARCIA MONAGAS
GISELDA GARCIA MONAGAS
Apelantes

v.

MIGUEL ANGEL GARCIA MENDEZ, WILDA FAJARDO ROGER, HECTOR FAJARDO
ROGER Y SU ESPOSA SONIA SOULFRONT, CARLOS M. FAJARDO HEYLIGER, ZORAIDA
FAJARDO HEYLIGER, ALBERTO FAJARDO BLAZIO, ILEANA HEYLIGER SANCHEZ,
MIGUEL ADRIAN CARLO FAJARDO, HEYDA M. CARLO FAJARDO, MIGUEL CARLO
AYMAT, CARLOS H. CARLO FAJARDO, JAIME ANNEXY FAJARDO Y SU ESPOSA MARIA
ARFARAS, ANDRES GUILLERMARD GINORIO, GLORIA GUILLERMARD GINORIO, ANA
RUTH GUILLERMARD FAJARDO, ARTURO ANDRES YDRACH GUILLERMARD, VICENTE
MANUEL YDRACH GUILLERMARD, RICARDO PESQUERA MARGARIDA, ROSALINDA
PESQUERA ANNEXY, ANA PESQUERA ANNEXY, RICARDO PESQUERA ANNEXY, RITA
VILELLA VDA. DE FAJARDO, JUAN E. VILELLA ARROYO, FIORI VILELLA GARCIA,
FLAVIA VILELLA GARCIA, ZULMA A. VILELLA GARCIA, NORAH BUSCH, EVA
MARTINEZ VDA. DE ZULUETA, ZOE BLASINI GARCIA OSCAR GARCIA BUSH, RAFAEL
A. GARCIA PALACIOS, OSCAR GARCIA PALACIOS, OSCAR BLASINI GARCIA, MIRIAM
(MARIA ANTONIETA) GARCIA BARBER, ILEANA GARCIA DE CARR, FREDESWINDA
GARCIA RAMIREZ DE FRONTERA, CENTRAL EUREKA, INC., WESTERN BANK, F.S.B.
Apelados

Núm. KLAN-95-01087

San Juan, Puerto Rico, a 11 de septiembre de 1997

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Colón Birriel y la Juez Feliciano de Bonilla

Brau Ramírez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

Los apelantes Diego García Monagas y Jorge García Monagas, recurren de una sentencia sumaria dictada el 31 de julio de 1995 por el Tribunal de Primera Instancia, Sala Superior de Mayaguez, desestimando la demanda sobre petición de herencia presentada por los apelantes contra los apelados de epígrafe por, entre otros fundamentos, existir cosa juzgada entre el caso de autos y la sentencia previamente emitida por el Tribunal de Primera Instancia en otro caso anterior presentado por los apelantes. El Tribunal impuso a los apelantes el pago de las costas del proceso.

Posteriormente, el 15 de agosto de 1995, el Tribunal enmendó su sentencia a los efectos de condenar a los apelantes al pago de honorarios de abogado por temeridad por las cantidades de $3,000.00 a favor del apelado Miguel Angel García Méndez, $2,000.00 a favor del apelado Western Federal Bank y $500.00 a favor de cada uno de los otros apelados que quedaban en el pleito al momento de la sentencia.

Los apelantes solicitaron al foro sentenciador que realizara determinaciones de hechos adicionales y que reconsiderara su dictamen, solicitud que fue denegada por el Tribunal de Primera Instancia.

Confirmamos la sentencia apelada.

### II

**Hechos**

### 1. La Sucesión de Diego García Saint Laurent

Según surge de los autos, el presente litigio tiene su génesis en la sucesión de Diego García Saint Laurent, quien falleció intestado el 11 de marzo de 1904, dejando cuantiosos bienes en Mayaguez, Puerto Rico. A la fecha de su muerte García Saint Laurent estaba casado con la Sra. Antonia Cabassa Texidor, con quien había procreado cuatro hijos: Jorge, Zulma, Oscar y Consuelo García Cabassa.

Los apelantes Diego y Jorge García Monagas son hijos del Sr. Jorge García Cabassa y, por lo tanto, nietos de don Diego García Saint Laurent y de doña Antonia Cabassa Texidor. Además de sus hijos con doña Antonia Cabassa, don Diego García Saint Laurent dejó cuatro hijos de un matrimonio anterior: Diego, Jesús María, María del Carmen y María Teresa, de apellidos García Mangual; y dos hijas naturales, Margarita y Rosario de apellidos García Hernández.

A la muerte de don Diego quedaron como sus herederos sus diez hijos y su viuda, la Sra. Cabassa Texidor, en la cuota viudal usufructuaria que dispone la ley. Todos los hijos eran menores de edad (Consuelo García Cabassa había sido concebida pero no había nacido). No se procedió, de primera intención, a la liquidación del caudal hereditario, el cual, alegadamente, estaba compuesto de bienes privativos pertenecientes al Sr. García Saint Laurent. El 26 de mayo de 1904 la Sra. Cabassa Texidor

fue nombrada administradora judicial del caudal relicto del Sr. García Saint Laurent por el antiguo Tribunal de Distrito, Sala de Mayaguez.

Con posterioridad a la muerte de don Diego, la Sra. Cabassa Texidor tuvo una relación íntima con el Sr. Mateo Fajardo Cardona, con quien tuvo un hijo y contrajo matrimonio. Según los apelantes, esta relación existía cerca de la muerte de don Diego, mientras la Sra. Cabassa Texidor administraba los bienes de su sucesión. Alegadamente, la Sra. Cabassa Texidor transfirió parte de los bienes del caudal de don Diego al Sr. Fajardo Cardona, en menoscabo de los hijos de éste.

En abril de 1905, el Sr. Leopoldo Cabassa y Pica, quien era primo hermano de la Sra. Cabassa Texidor, ejecutó judicialmente varias fincas y una central azucarera (la Central *"Santana"*) que formaban parte del caudal de don Diego. La Sra. Cabassa no objetó este proceso.

En 1907, el Sr. Fajardo Cardona junto a otros agricultores industriales, entre los que se encontraban el padre y hermano de doña Antonia Cabassa Texidor, fundó la Central Eureka, Inc. *("la Central")*, una corporación dedicada a la explotación agrícola. Alegadamente, el Sr. Fajardo Cardona, asistido por el padre de doña Antonia y otro individuo de nombre David Thomson, quienes eran ingenieros mecánicos, desmontó la maquinaría de la Central Santana e instaló la misma en la nueva Central Eureka que estaba situada en una finca de su propiedad en Hormigueros (la finca San José). Estas operaciones supuestamente fueron llevadas a cabo utilizando dineros de la sucesión de don Diego García Saint Laurent. Los honorarios del padre de la Sra. Cabassa Texidor y del ingeniero Thomson fueron satisfechos a través de acciones de la nueva central.

Posteriormente, Leopoldo Cabassa y Pica, quien se había convertido en dueño de la Central Santana se percató del traslado de la maquinaria a la Central Eureka y decidió vender a la sucesión García Saint Laurent los terrenos que anteriormente les había ejecutado.

Simultáneamente, se iniciaron varias acciones judiciales entre el Sr. Cabassa y Pica, doña Antonia Cabassa Texidor, Clotilde Mangual y el Sr. Fajardo Cardona.

En 1910, doña Antonia Cabassa otorgó un poder general a favor del Sr. Fajardo Cardona y se trasladó a Estados Unidos.

El 21 de diciembre de 1917 la Sra. Cabassa Texidor tuvo un hijo del Sr. Fajardo Cardona de nombre Teodoro Fajardo Cabassa. Para esa fecha, el Sr. Fajardo Cardona estaba casado con Emilia Dávila Mercader.

Doña Emilia Dávila Mercader falleció el 2 de agosto de 1921. El 8 de diciembre de 1921, la señora Cabassa y el Sr. Fajardo Cardona contrajeron matrimonio.

Pocos años después, luego de arribados a la mayoría de edad, el padre de los apelantes Jorge García Cabassa y sus hermanos vendieron a la abuela de los apelantes, doña Antonia Cabassa Texidor, la participación de los primeros en la sucesión de don Diego. Estos negocios se llevaron a cabo mediante la Escritura Núm. 22 otorgada el 20 de junio de 1924 por Jorge y Oscar García Cabassa y Antonia Cabassa Texidor ante el Notario Genaro Altiery y la Escritura Núm. 39 otorgada el 23 de agosto de 1930 ante el mismo notario por Jorge García Cabassa, la esposa de éste, sus hermanos Oscar, Zulma y Consuelo, todos de apellido García Cabassa y doña Antonia Cabassa Texidor.

El 24 de abril de 1925, fue revocado el poder general que la señora Cabassa había otorgado a favor del Sr. Fajardo Cardona.

Desde 1925 en adelante, el apelado Miguel Angel García Méndez se desempeñó como abogado de la familia García Cabassa y participó en el otorgamiento de numerosos convenios y escrituras públicas y privadas relacionadas, entre otras cosas, con la Central Eureka, de la cual posteriormente advino co-dueño.

**2. La Sucesión de Mateo Fajardo Cardona**

El Sr. Fajardo Cardona falleció el 6 de febrero de 1934. Le sobrevivieron nueve hijos, a saber: José Angel, Mateo, Luisa Fe, Esperanza y Caridad c/p María Luisa, Sara Emilia Rosalinda c/p Rosalinda, Manuela Emilia c/p Emilia, Carlos Humberto y Luisa Lydia c/p Lydia, todos de apellidos Fajardo Dávila, producto de su matrimonio anterior con la Sra. Emilia Dávila Mercader, y el menor de edad Teodoro Fajardo Cabassa, su hijo con la Sra. Cabassa Texidor.

El 13 de noviembre de 1935 los ocho hijos mayores del Sr. Fajardo Cardona, divididos en dos grupos identificados como *"A"* y *"B"* comparecieron, junto a la Sra. Cabassa Texidor y su hermano Teodoro quienes componían el grupo *"C"*, al otorgamiento de la Escritura Núm. 51 ante el notario apelado Miguel García Méndez sobre partición transaccional del caudal hereditario de su padre. Debido a que en esa fecha Teodoro era menor de edad, fue representado en la escritura particional por su hermano materno, Jorge García Cabassa, padre de los apelantes.

Supuestamente, los comparecientes acordaron que cada grupo tendría un director en la Central, incluyendo a Teodoro, representado por Jorge García Cabassa. Toda vez que era un requisito ser accionista para poder ser director en la corporación, las partes acordaron proveerle una acción a Jorge García Cabassa con el sólo propósito de que pudiera fungir como director. Sin embargo, el Sr. García Cabassa nunca fue titular de ese certificado de acción ni de las cinco acciones que ésta generó como dividendos.

No obstante el negocio anterior, la Comunidad Mateo Fajardo Cardona aparentemente no fue liquidada.

El 11 de febrero de 1936 la Sra. Cabassa Texidor compareció al otorgamiento de la escritura Núm. 3, sobre constitución de fideicomiso, en la ciudad de Mayaguez ante el notario Daniel Pellón Lafuente, en unión a los esposos Gabriel Soler y Manuela Emilia Fajardo Dávila, hija del Sr. Fajardo Cardona; Jaime Annexy y Rosalinda Fajardo Dávila, también hija del Sr. Fajardo Cardona; Carlos H. Fajardo Dávila, hijo del Sr. Fajardo Cardona, el aquí apelado García Méndez y Clemente Ruiz Nazario. Dicho fideicomiso alegadamente era para ceder el derecho al voto de las acciones que se habrían de entregar a los fiduciarios. Se constituyó como fiduciario al apelado García Méndez. La entrega nunca se verificó por lo cual el fideicomiso nunca entró en vigor.

### 3. La Sucesión de Jorge García Cabassa

El padre de los apelantes, Sr. Jorge García Cabassa, fungió como Secretario de la Central Eureka desde el otorgamiento de la Escritura Núm. 51 del 13 de noviembre de 1935 hasta su muerte el 10 de febrero de 1961. Al igual que su padre, el Sr. García Cabassa falleció intestado. Mediante resolución dictada en el caso CS-61-567 sobre declaratoria de herederos fueron declarados sus únicos y universales herederos, sus hijos Jorge, Giselda y Diego, de apellidos García Monagas, y Rafael Antonio Teodoro y Oscar Arturo, de apellidos García Palacios y su viuda Iraida Palacios Cortada en la cuota viudal usufructuaria.

La herencia dejada por Jorge García Cabassa fue puesta bajo administración judicial siendo designado administrador el aquí apelante Jorge García Monagas. Dicha designación se hizo en el caso Civil Núm. 61-665. El apelante administró la herencia de su padre hasta su liquidación, la cual fue verificada el 2 de marzo de 1963. En esa fecha, la viuda y todos los hijos del Sr. Jorge García Cabassa otorgaron la Escritura Núm. 101 ante el Lcdo. Carlos García Méndez mediante la cual liquidaron la herencia de su padre sin hacer salvedad alguna respecto a bienes faltantes.

### 4. Los Litigios Contra doña Antonia Cabassa Texidor

El 19 de febrero de 1968 Jorge, Diego y Giselda García Monagas presentaron una demanda contra su abuela, la Sra. Cabassa Texidor, en el antiguo Tribunal Superior, Sala de Mayaguez, Civil Núm. CS-68-404 en la cual reclamaban derechos hereditarios en determinados bienes inmuebles y acciones de la Central los que, según sus alegaciones, pertenecían a su padre Jorge García Cabassa como heredero del Sr. García Laurent.

Los apelantes alegaron que a pesar de que la Sra. Cabassa Texidor aparecía como titular de

determinados bienes muebles (acciones de la Central) e inmuebles éstos eran propiedad privativa de su abuelo el Sr. García Saint Laurent y que por tal razón ellos tienen una participación en los mismos. Argumentaron que la Sra. Cabassa Texidor había poseído dichos bienes en carácter de usufructuaria y administradora judicial del caudal del Sr. García Laurent.

Por otro lado, el 30 de marzo de 1970 las herederas del Sr. Oscar García Cabassa, también hijo del Sr. García Saint Laurent y la Sr. Cabassa Texidor, instaron en el mismo tribunal el caso CS-70-816 contra la Sra. Cabassa Texidor, en el que presentaban reclamaciones similares a las del caso CS-68-404. Ambos casos fueron consolidados el 28 de febrero de 1972.

La Sra. Cabassa Texidor contestó ambas demandas negando las alegaciones. Alegó que ella era la dueña legítima de los bienes reclamados en la demanda y que en caso de que existiera algún vicio en el título de dichos bienes había quedado subsanado por prescripción adquisitiva.

En ambos casos la Sra. Cabassa Texidor presentó una Moción de Sentencia Sumaria acompañada de una declaración jurada y de abundante prueba documental. Los demandantes de ambos casos se opusieron.

El 22 de marzo de 1973, mientras los litigios estaban pendientes, la Sra. Cabassa Texidor murió, dejando como sus herederos a los apelantes Jorge y Diego García Monagas, así como a Giselda García Monagas, Rafael y Oscar García Palacios, Miriam García Barber, Oscar García Bush, Zulma García Cabassa y Oscar y Zoé Blasini García.

El 24 de octubre de 1973, el Tribunal de Primera Instancia emitió una sentencia desestimando la demanda en el caso CS-68-404. El Tribunal concluyó que la Sra. Cabassa Texidor había adquirido un título dominical válido sobre los bienes en controversia, por lo que resultaba innecesario considerar las actuaciones ilegales imputadas a la Sra. Cabassa Texidor en su carácter de administradora judicial de los bienes relictos del causante Diego García Saint Laurent. Observó que:

*"De las escrituras públicas unidas a los autos...surge en forma evidente y clara que el padre de los aquí demandantes, ya en plena mayoría de edad y con pleno conocimiento de la existencia de la administración judicial y con la aceptación a su entera satisfacción de la liquidación del derecho usufructuario viudal vendió junto a sus otros hermanos toda su participación hereditaria en los bienes que se relacionan en el apartado tercero de la demanda enmendada.... Los relacionados bienes quedaron inscritos a favor de la demandada y a partir del 23 de agosto de 1930, la prueba demuestra que la promovente demandada por un término mayor de treinta (30) años quedó en la posesión en concepto de dueño, quieta, pública, pacíficamente y sin interrupción de clase alguna de los bienes inmuebles a que hemos hecho referencia antes."*

En cuanto a las acciones de la Central reclamadas por los apelantes, el Tribunal determinó que:

*"[F]ueron adquiridas por la demandada en virtud de la escritura pública Núm. 31 de 9 de septiembre de 1916 y fueron inscritas en el Libro de Accionistas de dicha corporación desde el 24 de noviembre de 1916, quedando demostrado por la prueba que surge de los autos del caso que la demandada y su posterior tenedor las ha poseído a título de dueño, quieta, pública, pacíficamente y sin interrupción por un período en exceso de seis (6) años."*

Los apelantes no recurrieron de dicho dictamen por lo cual el mismo advino final y firme.

Pocos meses después, el 10 de junio de 1974, el Tribunal dictó sentencia en el caso CS-70-816 declarando con lugar la solicitud de sentencia sumaria y desestimando la demanda por los mismos fundamentos que en el caso CS-68-404 sentencia del 24 de octubre de 1973 e incorporando la sentencia del referido caso al CS-70-816.

No conformes, las demandantes María Antonia García Barber conocida por Miriam y María Teresa Barber, acudieron en revisión ante el Tribunal Supremo, caso R74-242, el cual denegó el auto solicitado el 18 de octubre de 1974.

## 5. El Presente Litigio contra García Méndez

A través de los años, el apelado Miguel A. García Méndez adquirió interés en las acciones de la Central Eureka así como en los bienes de la Comunidad Mateo Fajardo. A la fecha del caso de autos, el apelado era presidente y condueño de la Central y comunero de la Comunidad. Esta participación del apelado provocó roces con los apelantes quienes entendían que las actividades económicas de la Central y de la Comunidad se habían originado en la apropiación de la Sra. Cabassa Texidor de los bienes de la herencia de Diego García Saint Laurent.

El 5 de febrero de 1990 los apelantes, compareciendo por derecho propio, presentaron la demanda de epígrafe sobre daños y perjuicios contra el apelado García Méndez. Se esbozaban cuatro causas de acción: (1) se solicitaba que se suministrara información sobre la Comunidad Fajardo Cardona; (2) se impugnaban ciertas transacciones hechas con bienes de dicha comunidad; (3) se alegaba que el demandado, con sus actuaciones ilegales había ocasionado daños a los apelantes, y (4) se solicitaba se ordenara la liquidación de la Comunidad Fajardo Cardona.

Pocos días después de presentada, los apelantes enmendaron la demanda para incluir como co-demandado a Juan Vilella. Posteriormente, sin embargo, el 24 de mayo de 1990, los apelantes desistieron de su reclamación en cuanto a este último, dictándose la correspondiente sentencia parcial el 5 de junio de 1990.

El apelado García Méndez contestó la demanda negando las alegaciones. Levantó, además, varias defensas afirmativas, entre ellas, que el único propósito del pleito era obtener información sobre la Comunidad Fajardo Cardona, lo que los apelantes estaban intentando conseguir en otro litigio presentado ante la Sala de San Juan del Tribunal de Primera Instancia. También alegó que la reclamación de los apelantes estaba prescrita y que existía cosa juzgada.

El 18 de julio de 1990, los apelantes enmendaron su demanda por segunda ocasión. Alegaron que el apelado García Méndez era fiduciario de la sucesión de doña Antonia Cabassa. Solicitaron que se decretara la fecha exacta en que había concluido el fideicomiso, que se ordenara al apelado rendir cuentas como fiduciario, que se decretara la nulidad de ciertos documentos y que se condenara al apelado al pago de $20,000.00 por concepto de daños y perjuicios ocasionados. En esta enmienda se incluyeron como demandados a las siguientes personas: Oscar Blasini García, Zoé Blasini García, Oscar García Bush, Miriam García Barber, Zulma Vilella García, Fiori Vilella García, Flavia Vilella García, Rita Vilella Vda. de Fajardo, Oscar García Palacios, Rafael García Palacios y Giselda García Monagas.

El apelado García Méndez contestó la demanda enmendada negando nuevamente las alegaciones. Planteó además que el fideicomiso constituido por doña Antonia Cabassa Texidor se había terminado. Para esta fecha, el Tribunal ordenó a los apelantes contratar representación legal.

Mediante sentencia parcial del 22 de diciembre de 1991, se desestimó la demanda contra el co-demando Oscar García Palacios, al no existir una causa de acción en contra de éste. Los otros demandados contestaron la demanda, negando las alegaciones.

Luego de otros incidentes, se celebró la conferencia cor antelación al juicio. En su informe sobre conferencia preliminar entre abogados, los apelantes volvieron a variar su teoría del caso.

Mediante moción presentada el 18 de diciembre de 1991, los apelantes desistieron de su demanda contra Oscar Blasini García, Zoé Blasini García, Oscar García Bush, Miriam García Barber, Zulma Vilella García, Fiori Vilella García, Flavia Vilella García, Rita Vilella Vda. de Fajardo, Oscar García Palacios y Rafael García Palacios. Solicitaron, además, que Giselda García Monagas fuese considerada parte demandante, por tener intereses comunes con los de los apelantes.

El 26 de diciembre de 1991, los apelantes, en unión a Giselda García Monagas presentaron su tercera demanda enmendada. En ésta alegaron, tal y como lo habían hecho en el caso CS-68-404, que el apelado García Méndez se había adueñado ilegalmente de los bienes pertenecientes a la sucesión de don Diego García Saint Laurent, en perjuicio de los herederos de éste y, en particular, del causante de

los apelantes, Jorge García Cabassa, y en violación de las obligaciones del apelado García Méndez como fiduciario de las acciones de doña Antonia Cabassa y los otros herederos de la familia García Cabassa en la Central Eureka. Se alegaba que dentro de las acciones de estos últimos se habían escondido las que representaban el caudal hereditario de Diego García Saint Laurent, las cuales equivalían a cuatro quintas partes de las acciones totales del grupo.

Se alegaba, además, que al momento de su muerte en 1961, el padre de los apelantes, Jorge García Cabassa, era tenedor de seis acciones de la corporación Central Eureka, pese a lo cual el apelado había evitado desde entonces y en todo momento que los apelantes participaran en las reuniones de accionistas de dicha corporación o que recibieran los dividendos a los que tenían derecho.

En la demanda se solicitaban daños por las actuaciones ilegales del apelado, ascendentes a veinte millones de dólares ($20,000,000.00).

El 28 de enero de 1992, el Tribunal emitió sentencia parcial admitiendo el desistimiento de la demanda en cuanto a los co-demandados individuales mencionados. Permaneció como único demandado el apelado García Méndez, quien contestó la demanda enmendada negando una vez más las alegaciones. Planteó que las reclamaciones estaban prescritas, y que la reclamación constituia cosa juzgada.

El 13 de agosto de 1993, los apelantes presentaron su cuarta demanda enmendada, cuyas alegaciones correspondían esencialmente a la de su enmienda del 26 de diciembre de 1991. Se incluian como co-demandados a treinta y ocho (38) personas, incluyendo a Central Eureka y al Westernbank F.S.B. No obstante, la demanda no incluia alegaciones contra ninguno de estos. ■ El apelado negó las alegaciones.

Luego de otros incidentes, el apelado presentó una Moción de Desestimación y/o Sentencia Sumaria. Los apelantes se opusieron a la misma.

El 31 de julio de 1995, mediante la sentencia apelada, el Tribunal declaró con lugar la moción del apelado y desestimó la demanda. En su bien fundamentada sentencia, el Tribunal concluyó que la reclamación de los apelantes estaba impedida por las sentencias previamente emitidas en los casos CS-68-404 y CS-70-816, las cuales constituian cosa juzgada y/o impedimento colateral. El Tribunal consideró que aunque los casos anteriores habían sido presentados contra doña Antonia Cabassa Texidor, las sentencias eran invocables por el apelado García Méndez, porque éste se encontraba en la misma posición que aquélla, con respecto a la reclamación de los apelantes:

*"En este/proceso, al igual que en el CS-68-404 se ejercita la misma acción, se invocan iguales fundamentos, las reclamaciones se apoyan en los mismos títulos, se reclaman iguales derechos, los demandantes son exactamente los mismos y en ambos casos, se beneficiaban con sus reclamos. Para todos los fines prácticos, Antonia Cabassa Texidor y Miguel Angel García Méndez, están en la misma posición, lo que produce entre ellos una relación de solidaridad requerida en casos donde se alega la defensa de cosa juzgada o impedimento colateral por sentencia."*

La ilustrada Sala recurrida también observó, por otro lado, que para poder prevalecer, los apelantes tenían el peso de establecer su título sobre los bienes reclamados, lo que quedaba derrotado por el dictamen anterior del Tribunal en los casos mencionados y que, considerada como una acción pura de daños y perjuicios, la reclamación de los apelantes estaba prescrita. Concluyó que no existía controversia real sustancial sobre los hechos esenciales y procedió a desestimar la demanda en su totalidad.

El 10 de agosto de 1995 los demandantes presentaron una moción titulada Solicitud de Determinaciones de Hechos y Conclusiones de Derecho Adicionales. El 14 de agosto de 1995 solicitaron la reconsideración de la sentencia. Ambas solicitudes fueron denegadas el 15 de agosto de 1995. Ese mismo día, 15 de agosto de 1995, el Tribunal enmendó *nunc pro tunc* su sentencia de 31 de julio de 1995 a los efectos condenar a los demandantes al pago de honorarios de abogado por temeridad.

Insatisfechos los apelantes acudieron ante este Tribunal.

### III

En su recurso, los apelantes señalan la comisión de numerosos errores. En síntesis, alegan que erró el Tribunal *a quo* al resolver que la defensa afirmativa de cosa juzgada o su modalidad de impedimento colateral por sentencia es de aplicación al caso de autos; que incidió al disponer de la totalidad del caso mediante el mecanismo de sentencia sumaria; y al imponerles el pago de honorarios de abogados. No les asiste la razón.

El Artículo 1204 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3343, codifica en nuestra jurisdicción la defensa de cosa juzgada, ■ disponiendo, en lo pertinente, que:

*"Contra la presunción de que la cosa juzgada es verdad sólo será eficaz la sentencia ganada en juicio de revisión. Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en el que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron.*

........

*Se entiende que hay identidad de personas siempre que los litigantes del segundo pleito· sean causahabientes de los que contendieron en el pleito anterior, o estén unidos a ellos por vínculos de solidaridad o por los que establece la indivisibilidad de las prestaciones entre los que tienen derecho a exigirlas u obligación de satisfacerlas."*

La doctrina de cosa juzgada está fundada en consideraciones de orden público y necesidad, entre varios, el interés del estado en que se le ponga fin a los litigios, el de dar la debida dignidad a los fallos de los tribunales, la deseabilidad de que no se someta a un ciudadano a las molestias que supone relitigar la misma causa y el evitar decisiones inconsistentes. Véase *Vázquez v. Administración de Reglamentos y Permisos,* ___ D.P.R. ___ (1991), **91 J.T.S. 53**, a la pág. 8,661; *Pagán Hernández v. U.P.R.,* 107 D.P.R. 720, 732 (1978); *Lausell Marxuach v. Díaz de Yáñez,* 103 D.P.R. 533, 536 (1975); *Pérez v. Bauzá,* 83 D.P.R. 220, 225 (1961).

No obstante, no será aplicada inflexiblemente cuando al así hacerlo derrotaría los fines de la justicia, especialmente si hay involucradas situaciones de orden público. *Worldwide Food Distributors v. Colón Bermúdez,* ___ D.P.R. ___ (1993), **93 J.T.S. 114**, a la pág. 10,966; *Pagán Hernández v. U.P.R.,* 107 D.P.R. a la pág. 731; *Pérez v. Bauzá,* 83 D.P.R. a la pág. 226; *Millán v. Caribe Motors Corp.,* 83 D.P.R. 494, 509 (1961).

Para que prevalezca la presunción de cosa juzgada se requiere que concurra la más perfecta identidad entre las cosas, las causas, las personas litigantes y la calidad en que lo fueron en el caso resuelto por la sentencia y aquél en que dicha defensa afirmativa sea invocada. Véase, 31 L.P.R.A. sec. 3343; *Worldwide Food Distributors v. Colón Bermúdez,* ___ D.P.R. ___ (1993), **93 J.T.S. 114,** a la pág. 10,966; *Lausell Marxuach v. Díaz de Yáñez,* 103 D.P.R. a la pág. 535. Hace falta, además, que la sentencia dictada en el primer pleito haya sido dictada por un tribunal o agencia con jurisdicción y que sea final y firme. Véase, *Vázquez v. Administración de Reglamentos y Permisos,* ___ D.P.R. ___ (1991), **91 J.T.S. 53,** a la pág. 8,661; véase, además, Manresa, *Comentarios al Código Civil Español,* Tomo 8, Vol. 2, 6ta ed., Madrid, 1967, pág. 286.

Según desarrollada por el Tribunal Supremo de Puerto Rico, la doctrina de cosa juzgada incluye la modalidad adicional denominada impedimento colateral por sentencia. *Rodríguez Rodríguez v. Colberg Comas,* ___ D.P.R. ___ (1992), **92 J.T.S. 102**, a la pág. 9,795; *A & P Gen. Contractors v. Asoc. Caná,* 110 D.P.R. 753, 763 (1981). Este último existe *"cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final. Como resultado, tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas en causas de acción diferentes".* A & P Gen. Contractors v. Asoc. Caná, 110 D.P.R. a la pág. 762.

Al igual que la cosa juzgada, el impedimento colateral por sentencia, puede plantearse de dos

formas: ofensiva o defensivamente. Se invoca ofensivamente cuando un demandante impide a un demandado relitigar asuntos previamente litigados y perdidos en pleito anterior frente a otra parte; defensivamente cuando un demandado, para impedir a un demandante relitigar asuntos ya planteados y perdidos por el demandante en pleito anterior frente a otra parte. *A & P Gen. Contractors v. Asoc. Caná,* 110 D.P.R. a la pág. 758.

El Tribunal Supremo de Puerto Rico ha resuelto que la aplicación de la defensa de impedimento colateral requiere la existencia de la identidad entre las cosas, las causas, los litigantes y la calidad de éstos. Véase, *A & P Gen. Contractors v. Asoc. Caná,* 110 D.P.R. a la pág. 764. En particular, la ausencia de identidad entre las partes derrota la aplicación de esta defensa. *Id.,* a la pág. 766.

Los apelantes plantean que en la situación de autos erró el Tribunal de Instancia al concluir que estaban presentes las identidades requeridas por el citado art. 1204 del Código Civil, 31 L.P.R.A. sec. 3343. Existe identidad de cosas cuando el objeto o materia sobre la cual se ejercita la acción son los mismos en el caso actual y aquél cuya sentencia se invoca. *A & P Gen. Contractors v. Asoc. Caná,* 110 D.P.R. a la pág. 766; *Lausell Marxuach v. Díaz de Yáñez,* 103 D.P.R. a la pág. 535. El impedimento aplica si estatuyendo sobre el objeto de una demanda, el Juez está expuesto a contradecir una decisión anterior afirmando un derecho naciente o un derecho afirmado por esta decisión precedente. *A & P Gen. Contractors v. Asoc. Caná,* 110 D.P.R. a la pág. 765.

Siguiendo esta norma, resulta evidente que entre el caso de autos y el caso CS-68-404 existe identidad de cosa. Los bienes del caudal de don Diego García Saint Laurent cuya sustracción alegan los apelantes son los mismos que fueron reclamados por ellos en el caso CS-68-404 y sobre los cuales el Tribunal determinó que doña Antonia Cabassa Texidor había adquirido un título válido. No es posible conceder el remedio solicitado por los apelantes sin entrar en contradicción con el dictamen anterior que había adjudicado que los bienes en cuestión no pertenecían a los apelantes sino a la Sra. Cabassa Texidor. Respecto a la identidad de causas el Tribunal Supremo de Puerto Rico ha resuelto que la misma se relaciona al motivo de pedir de la parte. *A & P Gen. Contractors v. Asoc. Caná,* 110 D.P.R. a la pág. 765. Es el fundamento capital, el origen de las acciones o excepciones planteadas y resueltas, y no debe confundirse con los medios de prueba ni con los fundamentos legales de las pretensiones deducidas por las partes. *Lausell Marxuach v. Díaz de Yáñez,* 103 D.P.R. a la pág. 536 (citando a Manresa, *Comentarios al Código Civil Español,* Tomo VIII, Vol. 2, 6ta ed., 1967, pág. 301).

En la situación de autos, la causa de acción ejercitada por los apelantes no es idéntica a la envuelta en el caso CS-68-404. Se trata, no de una demanda sobre la reivindicación o petición de herencia sobre ciertos bienes específicos, sino más bien de una causa de acción por daños por la sustracción y apropiación ilegal de los bienes de los apelantes. No obstante, según observara la ilustrada Sala de Instancia, el hecho de la titularidad de dichos bienes constituye un requisito previo a la concesión del remedio solicitado por los apelantes. Ese hecho, sin embargo, les fue adjudicado adversamente en los casos anteriores. Se trata, por lo tanto de un impedimento colateral por sentencia. *A & P Gen. Contractors v. Asoc. Caná,* 110 D.P.R. a la pág. 765.

En lo tocante a la identidad de personas o partes el artículo 1204 establece que *"hay identidad de personas siempre que los litigantes del segundo pleito sean causahabientes de los que contendieron en el pleito anterior, o estén unidos a ellos por vínculos de solidaridad o por los que establece la indivisibilidad de las prestaciones entre los que tienen derecho a exigirlas u obligación de satisfacerlas."*

El Tribunal Supremo de Puerto Rico ha señalado que *"existe jurídicamente identidad de personas, aunque no sean físicamente las mismas que litigen en los dos pleitos, cuando la que litiga en el segundo pleito ejercita la misma acción e invoca iguales fundamentos y se apoya en los mismos títulos que en el primero...".* Véase, Sucn. *Zayas Berríos v. Berríos,* 90 D.P.R. 551, 565 (1964); véase, además, Manresa, *Comentarios al Código Civil Español,* Tomo 8, Vol. 2 , 6ta ed., Madrid, Editorial Reus, 1967, págs. 310-11.

En *A & P Gen. Contractors v. Asoc. Caná,* el Tribunal Supremo también expresó que *"la solidaridad que se persigue es aquella capaz de situar en posición tal a las partes, como si fueran una*

*sola en relación a las prestaciones que puedan estar en litigio, el mismo tipo de relación que se produce entre el causahabiente y el causante".* 110 D.P.R. a la pág. 766

En la situación de autos, opinamos que no erró el Tribunal al concluir que entre la señora Cabassa y el apelado García Méndez existía una comunidad de interés suficiente para permitir al segundo invocar la sentencia emitida en la demanda presentada por los apelantes en los casos CS-68-404 CS-70-816 contra la Sra. Cabassa Texidor. En efecto, ya hemos visto que los bienes del caudal de don Diego García Saint Laurent cuya titularidad se alega por los apelantes son los mismos que fueron anteriormente reclamados de la Sra. Cabassa Texidor y que el Tribunal adjudicó que pertenecían a ésta. De acuerdo a las propias alegaciones de la demanda, el apelado García Méndez obtuvo dichos bienes del caudal con la participación de la señora Cabassa, quien, como administradora de la sucesión, tenía posesión de los mismos.

El título del apelado a los bienes, de este modo, descansa en el título anterior que sobre los mismos ostentaba la Sra. Cabassa Texidor. Entre el apelado García Méndez y la Sra. Cabassa Texidor existe una solidaridad de títulos y derechos. De prevalecer los apelantes contra el apelado, éste podría reclamar contra los sucesores de la Sra. Cabassa Texidor el saneamiento por evicción contemplado por los artículos 1363 y subsiguientes del Código Civil, 31 L.P.R.A. secs. 3831 y ss. Pero los sucesores de la Sra. Cabassa Texidor opondrían a los apelantes el dictamen anterior del Tribunal que adjudicó a ésta la titularidad de dichos bienes.

Por último, respecto a la calidad en que las partes litigaron resulta claro que concurre la identidad requerida. Los apelantes han invocado su derecho como herederos de su padre y de don Diego García Saint Laurent mientras que, conforme a las alegaciones de la demanda, el apelado deriva su título sobre la propiedad de la Sra. Cabassa Texidor. El error no se cometió.

Está claro que la aplicación de la defensa de impedimento colateral al caso de autos no derrota los fines de la justicia ni perjudica interés público alguno, *Pérez v. Bauzá,* 83 D.P.R. a la pág. 226; *Millán v. Caribe Motors Corp.*, 83 D.P.R. 494, 509 (1961).

En cualquier caso, opinamos que la reclamación de los apelantes está prescrita. Cabe hacer hincapié en que las transacciones impugnadas por los apelantes ocurrieron a principio de siglo, la última de ellas (referente al fideicomiso otorgado en 1936) más de cincuenta años antes de la presentación de la demanda contra el apelado García Méndez. Las actuaciones de doña Antonia Cabassa Texidor a favor de Mateo Fajardo ocurrieron entre 1905 y 1925, cuando le fue revocado el poder a este último. doña Antonia acordó la liquidación de las herencias de sus hijos, incluyendo el padre de los apelantes, entre 1924 y 1930.

Mateo Fajardo falleció en 1934. Luego de esto, sus sucesores y causahabientes continuaron poseyendo sus bienes en calidad de dueños, al igual que lo hizo doña Antonia Cabassa Texidor.

Jorge García Cabassa, padre de los apelantes, falleció en 1961. Para esta fecha habían transcurrido ya más de treinta años desde que se había fijado su participación hereditaria, creándose un estado de derecho que no fue perturbado durante este intervalo.

No fue hasta 1968, sesenta y cuatro (64) años luego de su muerte, que los apelantes reclamaron sus derechos sobre la herencia de don Diego García Saint Laurent. El dictamen emitido el 24 de octubre de 1973 por el Tribunal en el caso CS-68-404, de que la señora Cabassa había adquirido título sobre los bienes poseídos por ella y sus causahabientes, era ya en ese momento, natural y razonable, en vista del lapso de tiempo transcurrido.

La reclamación de daños contra el apelado, sin embargo, se produjo diecisiete (17) años después de dicha sentencia, veintinueve (29) años luego de la muerte de Jorge García Cabassa y ochenta y seis (86) años después de la muerte de Diego García Saint Laurent, de cuyo evento derivan su título los apelantes. Bajo cualquier parámetro que pudiera ensayarse, es forzoso concluir, como lo hizo antes el Tribunal en el caso CS-68-404, que cualquier defecto en el título del apelado sobre los bienes en cuestión ha quedado subsanado por el tiempo, 31 L.P.R.A. sec. 5280; véanse, además, *Alonso v. Muñoz,* 76 D.P.R. 549 (1954); *Sucesión Rivera v. Manso,* 64 D.P.R. 645 (1945), o que cualquier

reclamación que hubieran tenido los apelantes quedó similarmente extinguida, ya hubiera sido la misma para pedir su herencia, reivindicar bienes del caudal, véase, 31 L.P.R.A. sec. 5293; *Arrieta Barbosa v. Chinea*, ___ D.P.R. ___ (1995), **95 J.T.S. 157;** o para solicitar compensación por daños, 31 L.P.R.A. sec. 5298; *Culebra Enterprises Corp. v. E.L.A.,* ___ D.P.R. ___ (1991), **91 J.T.S. 18.**

La Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. 23 Ap. III, R. 36.3, autoriza a un tribunal a dictar sentencia sumaria cuando no existe controversia real sustancial en cuanto a ningún hecho material y como cuestión de derecho la misma procede. *Rodríguez v. Secretario de Hacienda,* ___ D.P.R. ___ (1994), **94 J.T.S. 20,** a la pág. 11,550; *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 D.P.R. 714, 720 (1986); *Tello v. Eastern Air Lines,* 119 D.P.R. 83, 86 (1987).

En la situación de autos, entendemos que el Tribunal actuó correctamente al declarar con lugar la moción de la parte apelada. Coincidimos con el Tribunal apelado en que los apelantes no controvirtieron las contenciones expuestas por el apelado García Méndez en su solicitud de sentencia sumaria. *Gilberto Ramos v. Juan Ortiz,* ___ D.P.R. ___ (1995), **95 J.T.S. 18;** *P.F.Z. Properties, Inc. v. General Accident Insurance Company, P.R. Ltd.,* ___ D.P.R. ___ (1994), **94 J.T.S. 116;** *Pilot Life Insurance Company v. Crespo Martínez,* ___ D.P.R. ___ (1994), **94 J.T.S. 104.**

Los apelantes aducen que el Tribunal debió rechazar la mencionada Solicitud de Desestimación y/o Sentencia Sumaria debido a que el apelado había presentado una solicitud parecida en dos ocasiones anteriores durante el proceso, las cuales habían sido rechazadas por el Tribunal.

Lo cierto es, sin embargo, que tratándose de determinaciones interlocutorias, no existía impedimento para que el Tribunal declarara con lugar la moción del apelado. Véase, *Torres Cruz v. Municipio de San Juan,* 103 D.P.R. 217, 222 (1975).

Los apelantes también alegan que el Tribunal incidió al resolver mediante sentencia sumaria la segunda causa de acción de la demanda relacionada a la titularidad de las acciones en la Central Eureka. Alegan que en su Moción de Desestimación y/o Sentencia Sumaria el apelado no solicitó que el Tribunal dispusiera de dicha causa de acción por la vía sumaria.

Entendemos que no fue irrazonable la actuación del Tribunal de desestimar dicha causa. Según señalado, el padre de los recurridos Jorge García Cabassa, falleció en 1961. La reclamación de los apelantes sobre este particular fue esgrimida veintinueve (29) años después. Cualquier derecho de los apelantes a dichas acciones estaba prescrito, 31 L.P.R.A. sec. 5292, así como cualquier reclamación por daños basado en lo anterior, 31 L.P.R.A. sec. 5298.

Sabido es que la revisión se da contra un dictamen, no contra sus fundamentos. Véase, *Piñeiro v. International Air Services of P.R., Inc.,* ___ D.P.R. ___ (1996), **96 J.T.S. 39,** a la pág. 843. No erró el Tribunal de Instancia al dictar sentencia sumaria sobre dicha reclamación. Véase, *Cintrón v. E.L.A.,* 127 D.P.R. 582, 596, (1990).

Los apelantes también se quejan de la imposición de honorarios de abogado por temeridad. El Tribunal Supremo de Puerto Rico ha aclarado que procede la imposición de honorarios de abogado por temeridad bajo la Regla 44.1 de las de Procedimiento Civil para castigar aquella conducta de una parte que haga necesario un pleito que se podía evitar, que lo prolongue innecesariamente o que produzca la necesidad de que la otra parte incurra en gestiones evitables. Véase, *Fernández v. San Juan Cement Co., Inc.,* 118 D.P.R. 713, 718719 (1987); véase, además, *Velázquez Ortiz v. Universidad de Puerto Rico,* ___ D.P.R. ___ (1991), **91 J.T.S. 36,** a las págs. 8,515-8,516.

El Tribunal de Primera Instancia goza de amplia discreción en este tipo de determinaciones. Véanse, *Miranda v. Estado Libre Asociado,* ___ D.P.R. ___ (1994), **94 J.T.S. 152,** a la pág. 527; *Ramírez v. Club Cala de Palmas,* 123 D.P.R. 339, 349 (1989); *Fernández v. San Juan Cement,* 118 D.P.R. a la pág. 717; *Raluán Corp. v. Feliciano,* 111 D.P.R. 598, 601-602 (1981).

En la situación de autos, los apelantes no nos han demostrado que la partida de honorarios de abogado impuesta sea excesiva, o constituya un abuso de discreción por lo que no nos inclinamos a sustituir el criterio del Tribunal de Primera Instancia sobre este particular. *Ramírez v. Club Cala de*

*Palmas,* 123 D.P.R. a la pág. 350. Observamos, en este sentido, que la reclamación de los apelantes gira en torno a hechos acontecidos hace dos generaciones y que las numerosas enmiendas realizadas a la demanda son demostrativas de un grado de vacilación en torno a los derechos que se pretendía reclamar. Es significativo, además, que pese a que la reclamación de los apelantes ha estado dirigida principalmente contra el apelado García Méndez, las alegaciones en su contra han sido expuestas con extrema vaguedad y generalidad. En estas circunstancias, declinamos intervenir con la decisión del Tribunal. Por los fundamentos expresados, se confirma la sentencia apelada .

Lo pronunció y manda el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 97 DTA 190

1. La única de estas partes mencionada en la demanda enmendada parece haber sido el Westernbank, sobre el cual se alegaba que había sido fundado por el apelado García Méndez utilizando el capital que éste se había apropiado del caudal de don Diego García Saint Laurent.

2. Véase el Artículo 421 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 1793, el cual exige requisitos similares a los del Art. 1204, *supra,* para la aplicación de la doctrina de cosa juzgada.